A95A2209. UNDERWOOD v. THE STATE.
(462 SE2d 434)

BIRDSONG, Presiding Judge.

Robert Underwood appeals his conviction of violation of Georgia Controlled Substances Act, OCGA § 16-13-30, by unlawful manufacture of and possession with intent to distribute marijuana. He enumerates four errors. *Held*:

1. The trial court did not err in denying appellant's motion to suppress and in admitting the evidence seized at trial. The State contends the search of appellant's home and the seizure of numerous marijuana plants being grown therein were lawful, as both were accomplished pursuant to a consent to search freely and voluntarily given by appellant.

In determining legality of a search, an appellate court can consider all relevant and admissible evidence of record, including that adduced at a suppression hearing before trial and that adduced during trial. *Newsome v. State*, 192 Ga. App. 846 (1) (386 SE2d 887). The State has the burden of proving that the necessary consent was freely and voluntarily given; this burden is not satisfied by showing a mere submission to a claim of lawful authority. *Garcia v. State*, 195 Ga. App. 635, 636 (1) (394 SE2d 542). Voluntariness of consent must be determined from all the attendant circumstances. Id. at 637 (1). Consent to search may be given after an item is seized, and once freely and voluntarily given, it eliminates the need for a search warrant or a showing of probable cause. *State v. McBride*, 261 Ga. 60, 62 (1) (401 SE2d 484); compare *Caldwell v. State*, 260 Ga. 278, 290 (2) (393 SE2d 436). Consent once given continues until it is unequivocally revoked or withdrawn. *Mallarino v. State*, 190 Ga. App. 398, 403 (379 SE2d

210).

The testimony of the State and the defense as to the circumstances surrounding the entry and search of appellant's home and as to whether appellant consented to the search was in conflict. The trial court judged witness credibility and weighed the evidence presented and thereafter found: "The defendant was lawfully in custody under arrest and that any statements that he made to the officers were freely and voluntarily made .without the slightest hope of benefit or reward and without the remotest fear of injury after having all of his rights as required under the *Miranda* decision explained to him and that he understood those rights. It is also the judgment of the court that the search of his premises was consented to by the defendant after he knew that he did not have to consent and understood that the officers would have to have a search warrant if he insisted and that he then consented to that and he voluntarily consented to that." Inherent within this ruling denying the suppression motion is a finding that appellant's arrest was lawful, that his voluntary consent to search was also freely given, and that his freely and voluntarily given statements were not obtained in violation of his *Miranda* rights. See *Garcia*, supra at 637 (1). "When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge 'hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it.' [Cit.] Second, the trial court's decision with regard to questions of fact and *credibility* must be accepted unless clearly erroneous. [Cit.] Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. [Cit.]" *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646). Applying these three principles, we conclude the trial court did not err in denying the motion to suppress as the arrest of appellant was lawful and appellant thereafter gave a free and voluntary consent to the search of his home.

Pretermitting whether a warrant of arrest was issued before the Secret Service agents arrested appellant is whether probable cause existed to justify his warrantless arrest. "A 'warrantless arrest' is constitutionally valid if at the time of the arrest the arresting officer has probable cause to believe the accused has committed or is committing an offense. [Cits.] Probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense." *Johnson v. State*, 258 Ga. 506, 507 (2)

(371 SE2d 396). Prior to appellant's arrest the Secret Service agents were aware that several bleached, office machine-copied, counterfeit $100 bills were passed through Georgia, Alabama, and Louisiana. A positive ID had been made from a photo spread in Alabama that appellant's son, Charles, had passed this type of counterfeit currency. Further, an agent had canvassed a Columbus, Georgia, supply house (which sells some office paraphernalia which can be used in counterfeiting). Persons at the supply house, in response to a description given to Secret Service agents of an individual passing the $100 bills stated appellant Robert Underwood fit that description. They also informed the inquiring agent that appellant had purchased a Canon CLC-200 and would buy parts for it at the supply house and, on such occasion, appellant would not give a telephone number or an address. The agency's lab in Washington had indicated to the field agents that these particular $100 bills were being printed on a Canon CLC-200. Research of the agency's files revealed that appellant had a prior record for counterfeiting and for producing OMC black and white counterfeit bills. As part of a photographic lineup, photographs of both appellant and his son were taken to establishments in Atlanta where the bleached $100 bills were passed, and some of the places "positively identified" appellant "as passing those bills." Further, appellant's description "met the description to a tee of the [person] who had been passing [the] note[s]." The primary case agent (who was not available to testify) subsequently filled out an arrest warrant; the record does not affirmatively establish whether the warrant was issued and, if so, when. Appellant was placed under surveillance about noon on the day of his arrest and was arrested for counterfeiting in the early evening after one of the surveillance agents concluded his cover had been compromised. The Secret Service agents had a verbal agreement from the United States Attorney to arrest appellant based on probable cause; the United States Attorney was notified, and he agreed with the arrest of appellant. Although it subsequently was determined that appellant had not passed the particular type bill in question, the record affirmatively establishes that the arresting Secret Service agent had probable cause for a warrantless arrest within the meaning of *Johnson*, supra.

It is the facts and circumstances existing within the knowledge of the arresting officer at the moment arrest occurs which are controlling. *Barnett v. State*, 204 Ga. App. 491, 493 (1) (a) (420 SE2d 43). The record further establishes that appellant initially gave a free and voluntary oral consent to the Secret Service agents to search his home and that he subsequently ratified this valid oral consent by executing a free and voluntary written consent to search after the agents had gained entry to his home; at no time did appellant withdraw either of these two freely and voluntarily given consents to the search of his

premises. This enumeration of error is without merit.

2. Appellant's second enumeration is that the trial court erred in denying his *Jackson-Denno* motions. This enumeration is without merit. See our holding in Division 1 above. Moreover, the record establishes that none of plaintiff's statements admitted in evidence was obtained in violation of his privilege against self-incrimination under either the Constitution of Georgia or the Fifth Amendment of the United States Constitution. The statements made by appellant to the police were either spontaneous, voluntary and not the product of an interrogation, or such statements were made after appellant was given a valid *Miranda* warning and had waived his rights thereunder. Appellant contends certain of his statements made during the agent's questioning were inadmissible because, after being advised of his *Miranda* rights, he handed the agent a business card of his attorney which contained on the back a preprinted statement purporting to assert a refusal to consent to search, a claim of exercise of the right to remain silent, and the exercise of the right to have his attorney present during questioning. Pretermitting whether such an ambiguous act places a burden on law enforcement officers to inquire whether any of the rights addressed on the preprinted business card are, in fact, being asserted (compare *Byrd v. State*, 261 Ga. 202 (2) (403 SE2d 38)) is the question whether the agent thereafter obtained a statement from appellant in violation of *Miranda*. The agent testified that when he was presented the card he immediately terminated the interview; however, as they were going back to the jail area, appellant "stated to [the agent] that there were some things we could talk about." At this point, the agent read the *Miranda* warning to appellant, and appellant signed the *Miranda* form. Assuming appellant adequately asserted his right to counsel and to remain silent, the agents could subject him to a renewed interrogation if appellant initiated further communication with the agents within the meaning of *Ashley v. State*, 261 Ga. 488, 489 (1) (405 SE2d 657), citing *Michigan v. Jackson*, 475 U. S. 625 (106 SC 1404, 89 LE2d 631) and *Edwards v. Arizona,* 451 U. S. 477 (101 SC 1880, 68 LE2d 378). As stated in *Ashley*, supra, the ultimate question is whether there was a free and knowing waiver before further interrogation commenced. Construing the evidence most strongly to support the trial court's denial of appellant's *Jackson-Denno* motions (see *Tate*, supra), we conclude that appellant initiated further conversation with the agents after presenting the preprinted business card and, during the course of such initiated conversation, exercised a free and voluntary waiver of his rights.

Additionally, "factual and credibility determinations, whether express or *implied,* as to voluntariness of a confession, including factual and credibility determinations as to issues of rights waiver, are normally made by the trial judge and must be accepted by appellate

courts unless such determinations are clearly erroneous." (Punctuation omitted; emphasis supplied.) *Rachell v. State*, 210 Ga. App. 106, 107 (2) (b) (435 SE2d 480). The ruling of the trial court denying appellant's *Jackson-Denno* motions was not clearly erroneous.

3. Appellant asserts the trial court erred in denying his motion for mistrial. During the course of examining a Secret Service agent as to how they determined that it was appellant who had been passing some counterfeit bills, which led to the arrest of appellant, the State asked a series of questions of the witness. During the course of attempting to answer the gist of the State's questions, the agent revealed to the jury that research of the agency's files determined that appellant previously had been arrested by the agency for counterfeiting. Appellant made an immediate motion for mistrial; the motion was denied; appellant elected not to request any form of curative instruction; and the trial court did not give such an instruction sua sponte.

Appellant's failure to request a curative instruction constitutes a waiver of any appellate issues regarding the giving of such an instruction to the jury. See *Carr v. State*, 259 Ga. 318 (2) (380 SE2d 700). Reversible error would not flow from the failure to give an unrequested curative instruction, as in no case will a trial judge's ruling or election be reversed for not going further than requested. *Zellner v. State*, 260 Ga. 749, 750 (3) (b) (399 SE2d 206).

The abuse of discretion standard applies to the review of the denial by the trial court of a motion for mistrial. *Muzquiz v. State*, 260 Ga. 547, 548 (5) (b) (397 SE2d 703). Pretermitting whether an abuse of discretion occurred in the denial of the mistrial motion is whether such error would have been harmless. Considering the totality of the circumstances surrounding the revelation that appellant previously had been convicted of counterfeiting and the overwhelming evidence of appellant's guilt of the offenses of which he was convicted, we find that any error in denying the motion for mistrial was harmless beyond a reasonable doubt. *Walker v. State*, 197 Ga. App. 265, 266 (398 SE2d 217), citing *Ellis v. State*, 256 Ga. 751, 755 (2) (353 SE2d 19); accord *Dorsey v. State*, 192 Ga. App. 657, 659 (3) (386 SE2d 167) (physical precedent only).

4. Appellant's enumeration that the trial court erred by engaging in "a conversation with the jury that consisted of a question and answer period" is without merit.

No objection was posed to the so-called question and answer period notwithstanding that this conversation occurred in open court and on the record. Appellant's contention that this procedure deprived him of a reasonable opportunity to respond, make suggestions, or make objections is not affirmatively supported by the record; to the contrary, there appears to have been ample opportunity for counsel to

have injected himself into the colloquy had he chosen, as a matter of sound trial tactics, to do so. The failure of appellant to object timely to the colloquy in open court preserves no issue thereto upon appellate review. See *Brooks v. State*, 258 Ga. 20, 22 (2) (365 SE2d 97).

Additionally, this is not a case involving an unauthorized communication between the court and the jury, which would give rise to a presumption of prejudice. Compare *Lockridge v. State*, 260 Ga. 528, 529 (397 SE2d 695). This is a situation where the trial court legitimately ascertained in open court whether the jury was raising a question as to fact or law, and upon determining that the jury had a question as to the law, the court proceeded to recharge the law applicable to the jury's question in open court and ascertained that the jury was satisfied as to the recharge given. When the jury in essence requests a charge or recharge on a particular point, the trial court has discretion also to give or not to give additional instructions. See generally *Patterson v. State*, 264 Ga. 593, 594 (2) (449 SE2d 97). Inherent within the judicial exercise of this discretion is the right and obligation of the trial court to attempt to ascertain accurately the nature and scope of the question being raised by the jury to the court. The trial court did not abuse its discretion in this case.

Further, we note that appellant does not assert that the trial court erred as to the substance of its recharge and *Allen* charge to the jury following the court's colloquy with the jury foreman to determine in open court the type and nature of the question which the jury wished to pose. The colloquy on its face poses no fair risk of prejudice to the fair trial rights of appellant. An appellant must show both error and harm affirmatively by the record to obtain case reversal when, as in this case, the trial court engages in open court in a legitimate colloquy with the jury. See *Robinson v. State*, 212 Ga. App. 613, 616 (2) (442 SE2d 901).

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED SEPTEMBER 14, 1995.

*John D. Rasnick, Richard L. Montgomery*, for appellant.
*Peter J. Skandalakis*, District Attorney, *David S. McLaughlin*, Assistant District Attorney, for appellee.

