## S99A1807. GOSDIN v. THE STATE.
(528 SE2d 230)

THOMPSON, Justice.

Defendant Raychel David Gosdin was convicted of malice murder, armed robbery, theft by receiving stolen property, and possession of a firearm during the commission of a felony. Following sentencing and the denial of his motion for a new trial, Gosdin appeals.[1] He asserts, inter alia, that the trial court erred in failing to suppress his confession because the police interviewed him in violation of *Edwards v. Arizona,* 451 U. S. 477 (101 SC 1880, 68 LE2d 378) (1981).

---

[6] 268 Ga. 809 (493 SE2d 169) (1997).

[1] Gosdin committed the crimes on September 6, 1996. He was indicted on January 22, 1998, and charged with malice murder, felony murder (predicated on the underlying felony of armed robbery), armed robbery, theft by taking from another county, theft by receiving stolen property, and possession of a firearm during the commission of a felony. Trial commenced on October 5, 1998, and the jury returned a verdict on October 9, 1998, finding Gosdin guilty on all counts except the theft by taking count. The trial court vacated the felony murder count and sentenced Gosdin to serve two consecutive life terms (for malice murder and armed robbery), followed by additional consecutive terms of ten years (for theft by receiving), and five years (for possession of a firearm). Gosdin's timely filed motion for a new trial was denied on March 23, 1999, and he filed a notice of appeal on April 20, 1999. The case was docketed in this Court on September 7, 1999, and orally argued on January 18, 2000.

Gosdin, a 16-year-old high school dropout from a broken home, befriended Shawn Gilreath, an older, married man who espoused neo-Nazi, anti-government views, and was the "brains" behind a small group which committed crimes to garner money and weapons.

Gosdin fell under Gilreath's influence and, together, they planned to rob the Bear Paw, an army surplus store. While Gilreath waited in his car, Gosdin entered the store, looked around, and found an item which he took to the cash register. When the cashier opened the register, Gosdin pulled out a gun (which he had received in a previous burglary) and shot the cashier two times, killing him.

Gosdin took money from the register, ran out of the store, and rendezvoused with Gilreath. The next day, Gosdin took a bus to San Diego, California, where, after learning that a warrant had been issued for his arrest, he made arrangements to surrender.

Gosdin was arrested in San Diego. He waived extradition at an extradition hearing in which an attorney volunteered to represent him. Immediately after the extradition hearing, Michael Montgomery, Chief of Police of the Jonesboro Police Department, interviewed Gosdin in San Diego. At the outset of the interview, Chief Montgomery advised Gosdin of his rights, including his right to counsel. Gosdin signed a written waiver of rights form, and confessed to Chief Montgomery. Following his return to Georgia, Gosdin confessed several more times.

1. The evidence is sufficient to enable any rational trier of fact to find Gosdin guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Gosdin claims the trial court erred in failing to suppress his confession for three reasons: (a) Chief Montgomery initiated the interview with Gosdin, even though Gosdin had previously invoked his right to counsel; (b) Gosdin requested an attorney at the outset of the interview; and (c) Chief Montgomery offered Gosdin a "hope of benefit." We consider these claims seriatim.

(a) Once an accused in custody invokes the right to counsel, he cannot be interrogated further unless counsel is present, or he himself initiates further exchanges or conversations with the police. *Edwards v. Arizona*, 451 U. S. 477, supra. Relying upon *Edwards* and *Roper v. State*, 258 Ga. 847 (375 SE2d 600) (1989), Gosdin argues his confession should have been suppressed because Chief Montgomery initiated the interview with Gosdin after an attorney was appointed to represent him at the extradition hearing.

In *Roper*, the defendant, who had been arrested in New Jersey, signed a form requesting the assistance of a lawyer. A public defender received the form and appeared in court to represent the defendant at an extradition hearing. The defendant waived extradi-

tion. Before he was returned to his cell, the public defender advised the defendant "to keep his mouth shut until he arrived in Georgia and could speak to another attorney." Later that day, a Savannah detective arrived in New Jersey and interviewed the defendant, who confessed. The defendant moved to suppress his confession; the trial court denied his motion. This Court reversed, finding, inter alia, that the defendant had invoked his right to counsel; that the defendant's invocation of that right was not limited to certain settings; and that, therefore, the detective violated *Edwards* when he initiated the interview with the defendant.

In this case, unlike *Roper*, Gosdin did not fill out a form requesting the appointment of an attorney. Although an attorney who was at the extradition hearing volunteered to represent Gosdin at that hearing, it is clear that Gosdin did not invoke his right to counsel and that the attorney's representation of Gosdin was limited to extradition issues. It follows that Chief Montgomery did not initiate the interview with Gosdin in violation of *Edwards*. See *Krier v. State*, 249 Ga. 80 (287 SE2d 531) (1982), in which this Court found that a confession was not obtained in violation of *Edwards* because extradition counsel had been discharged before the police questioned the defendant.

(b) Gosdin claims he invoked his right to counsel and that the interview proceeded in violation of that right. The trial court conducted a *Jackson-Denno* hearing and found that Gosdin was advised of his *Miranda* rights, that he waived them, and that his confession was given freely and voluntarily. That finding was based on the testimony of Chief Montgomery, who testified that, at the outset of the interview, he advised Gosdin of his right to counsel, and that Gosdin never invoked that right. It was also based on the testimony of another officer who interviewed Gosdin when he was returned to Georgia. That officer stated that he advised Gosdin of his right to counsel and asked him if he had already invoked that right and that Gosdin said he had not. The trial court's findings are not clearly erroneous. Thus, it cannot be said that Chief Montgomery conducted the interview in violation of Gosdin's right to counsel. See *Gober v. State*, 264 Ga. 226, 228 (2) (443 SE2d 616) (1994) (trial court's findings as to admissibility of confession will be upheld on appeal unless clearly erroneous).

(c) Gosdin's assertion that Chief Montgomery induced his confession by telling him he would escape electrocution if he confessed is without merit. The trial court was authorized to find that Gosdin's confession was not induced by the slightest hope of benefit. Chief Montgomery denied that he offered Gosdin a lighter sentence if he would confess. "Since the trial court weighed the credibility of witnesses and apparently believed the [chief's] testimony, we cannot say

that the court's finding was clearly erroneous. [Cit.]" *Baker v. State*, 211 Ga. App. 515, 516 (2) (439 SE2d 668) (1993).

3. Gosdin confessed to other police officers in Georgia after he was interviewed by Chief Montgomery in San Diego. He asserts that those confessions were the poisonous fruit of Chief Montgomery's offer of benefit. In view of our ruling in Division 2 (c), this assertion is without merit.

4. Gosdin asserts his trial attorney was ineffective because (a) although she had recently undergone heart surgery and was mentally and physically fatigued, the trial court refused to take a break during the *Jackson-Denno* hearing because it wanted to finish the hearing in one day; (b) she demanded a speedy trial and did not give herself adequate time to find a crucial witness, i.e., Wilfred Rumble, the attorney who volunteered to represent Gosdin at his extradition hearing; (c) she took inadequate steps to find Rumble.[2] In this connection, Gosdin asserts that Rumble would have supported Gosdin's assertion that he invoked his right to counsel before Chief Montgomery interviewed him.

Even if it could be said that the performance of Gosdin's trial counsel was deficient, Gosdin cannot demonstrate he was prejudiced. See *Zant v. Moon*, 264 Ga. 93, 98 (440 SE2d 657) (1994) (even if trial counsel's conduct fell below constitutional standards, defendant must prove there is a likelihood that counsel's deficient performance prejudiced the defense). Although Rumble could have testified that he told Gosdin that he should not speak to the police without an attorney, he was not present when Chief Montgomery met with Rumble. Thus, he could not testify whether Gosdin invoked, or waived, his *Miranda* rights.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 13, 2000.

*Emmett J. Arnold IV*, for appellant.

*Robert E. Keller, District Attorney, D. Brandon Hornsby, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Wesley S. Wood, Assistant Attorney General*, for appellee.

---

[2] Gosdin's attorney attempted to find Rumble by telephoning the San Diego juvenile court and the public defender's office, as well as telephone information in several California counties.