## S00A1231. LUCAS v. THE STATE.
### (538 SE2d 44)

BENHAM, Chief Justice.

This appeal is from Johnny Michael Lucas's convictions for murder and cruelty to children.[1] Lucas and the woman with whom he

---

[1] The victim in this case died on April 25, 1992, and Lucas was indicted on June 6, 1992,

lived brought her daughter to the hospital where the child was pronounced dead. The emergency room physician noted that she had bruises on her face, abdomen, arms, legs, back, and pelvis; that she had cuts on her head; and that her abdomen was distended. The injuries were estimated to be three days old. The cause of death was blunt object injuries to the abdomen, producing a tear of the mesentery and bleeding into the abdominal cavity. The injury was consistent with a strong kick to the abdomen, and the physician testified that the child would have survived if treated promptly. Lucas surrendered himself to the police three days after the child's death. At trial, police testimony indicated that Lucas admitted kicking the child in the abdomen three days before her death. In his testimony, Lucas denied kicking the child and explained that he had pushed her away from a hot stove with his foot because he was holding another child. An expert on bruising testified that one bruise on the child's abdomen was consistent with Lucas's foot while another was consistent with the fist of the child's mother.[2]

1. The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find Lucas guilty beyond a reasonable doubt of murder and cruelty to a child. *Parker v. State*, 270 Ga. 256 (1) (507 SE2d 744) (1998).

2. Prior to trial, Lucas filed a motion to suppress a statement which the State attributed to him. The motion was based on the proposition that "authorities may not interrogate a suspect in custody who has requested counsel, unless counsel is made available, or the accused initiates further communication with the police. [Cits.]" *Gissendaner v. State*, 269 Ga. 495, 497 (500 SE2d 577) (1998).

At the hearing on Lucas's motion, Lucas and the relative who accompanied him when he surrendered to the police testified that Lucas repeatedly told police officers that he wanted to speak to an attorney. The police officers to whom Lucas allegedly invoked his Fifth Amendment right to counsel testified that he did not ask for counsel at all in their hearing. The trial court resolved the conflicts in testimony in favor of the State, expressly finding the police officers

---

for malice murder, two counts of cruelty to children, and aggravated battery. His trial, commenced on January 25, 1993, concluded January 28 with verdicts of guilty of malice murder, one count of cruelty to children, and aggravated battery, the trial court having granted Lucas's motion for directed verdict as to one count of cruelty to children. The trial court sentenced him on January 29, 1993, to life imprisonment for malice murder and a consecutive term of 15 years for cruelty to children, and merged the aggravated battery conviction into the murder conviction. A motion for new trial was filed on February 17, 1993, and denied on March 23, 1993, and a notice of appeal was filed on that same date. Following proceedings resulting in the production of a transcript missing from the record, the case was transmitted to this Court and was docketed on April 7, 2000. Oral argument was heard on June 20, 2000.

[2] The child's mother was also convicted of the child's murder. *Woodbury v. State*, 264 Ga. 31 (440 SE2d 461) (1994).

more credible than the defense witnesses. Since, as to all the occasions on which Lucas claimed he invoked his right to counsel and police officers swore he did not, there is evidence to support the trial court's findings, the trial court's ruling on those issues of fact is not clearly erroneous and we are constrained to uphold it. *Gosdin v. State*, 272 Ga. 205 (2) (b) (528 SE2d 230) (2000).

There were, however, two occasions during the interrogation of Lucas concerning which there is no dispute that Lucas made reference to counsel and to counsel's specific advice about being questioned. On one occasion, Lucas said, "[M]y lawyer told me, the one I talked to, not to say nothing. . . ." Later during the same interrogation, Lucas said, "My attorney told me not to answer nothing." The record shows that interrogation continued without pause in each instance.

The question before us is whether those two statements by Lucas were invocations of his right to counsel sufficient to trigger the requirement that interrogation cease.

> The suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." [Cit.] We have previously held that statements that "I might need a lawyer" and "I will still talk to my lawyer tomorrow" were not clear and unambiguous requests for counsel. [Cits.]

*Moore v. State*, 272 Ga. 359 (2) (528 SE2d 793) (2000). At the other end of the spectrum from those described in *Moore* is *Gissendaner*, supra, where an attorney had requested that no interviews be conducted in his absence and Gissendaner was denied a request to call that attorney.

Lucas's statements regarding an attorney's instructions to him not to answer questions fall between the extremes set forth above. Although not so absolute as the request in *Gissendaner*, Lucas's statements plainly demonstrate his concern about being questioned without the benefit of counsel. We conclude that under the circumstances of the case, a reasonable police officer would have understood Lucas's statements to be a request for counsel to be present during questioning.

> [O]nce an accused has "expressed his desire to deal with the police only through counsel, he is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the

police." [Cit.] The Supreme Court has defined interrogation or its functional equivalent as express questioning by law enforcement officers or " 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " [Cits.] The Supreme Court has expressed particular concern about deceit or trickery during a police interrogation.

*Cook v. State*, 270 Ga. 820 (2) (514 SE2d 657) (1999). In the present case, the interrogation did not cease. Although the police officers purported to be preparing forms related to Lucas's arrest, it is clear from the transcript of their conversation that questions pertinent to the investigation were interspersed with administrative questions. The statement Lucas most wanted suppressed, one in which the interrogator and a polygraph examiner both testified that Lucas admitted kicking the victim, resulted from a polygraph examination initiated by the police, not by Lucas.

Since all the questioning subsequent to Lucas's invocation of his right to counsel should not have occurred, it follows that the trial court's denial of Lucas's motion to suppress the statements was clearly erroneous. *Gissendaner*, supra. Accordingly, Lucas's conviction must be reversed. Id.

*Judgment reversed. All the Justices concur, except Sears and Hunstein, JJ., who concur specially.*

HUNSTEIN, Justice, concurring specially.

The record in this case reveals that prior to reading Lucas his *Miranda* rights, a police officer engaged Lucas in a conversation regarding the crime for which Lucas had already been arrested. At one point, Lucas told the officer: "my lawyer told me, the one I talked to, not to say nothing." The majority treats this statement as an invocation of Lucas's right to counsel. While I can appreciate why the majority feels that this ambiguous statement implicated the right to counsel, I find that the statement should more appropriately be analyzed as an invocation of Lucas's right to remain silent. In the statement, Lucas informed the officer that he had an attorney (or at least had already talked to an attorney) and nothing in the statement intimates that Lucas was asking to have that attorney or other counsel present. Rather, Lucas was telling the officer that Lucas had been advised by counsel not to say anything. The officer knew Lucas had talked with counsel; the question for the officer was whether Lucas was following counsel's advice and exercising his right to remain silent.

The United States Supreme Court's ruling in *Miranda v. Ari-*

*zona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966) protects not only the right to counsel but also the right to remain silent. *Miranda* provides that

> If the [person in custody] indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.

(Footnote omitted.) Id., 384 U. S. at 473-474. The admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored." *Michigan v. Mosley*, 423 U. S. 96, 103 (96 SC 321, 46 LE2d 313) (1975). See also *Hatcher v. State*, 259 Ga. 274 (2) (379 SE2d 775) (1989).

Unlike the defendant in *Hatcher*, supra, Lucas did not unambiguously tell the officer that he (Lucas) personally did not want to talk anymore. Telling the officer that Lucas's attorney told him not to talk created an ambiguity in the invocation of this constitutional right. See *Underwood v. State*, 218 Ga. App. 530, 533 (2) (462 SE2d 434) (1995) (accused handed officer "a business card of his attorney which contained on the back a preprinted statement purporting to assert . . . a claim of exercise of the right to remain silent," among other rights). Although the Court of Appeals in *Underwood* did not have to reach the issue "whether such an ambiguous act place[d] a burden on law enforcement officers to inquire whether any of the rights addressed on the preprinted business card [were], in fact, being asserted," id., this Court has discussed this issue, albeit in dicta. In *Hatcher*, supra, the accused gave three statements to the police, two of which were equivocal. The *Hatcher* Court quoted with approval language from an 11th Circuit case which required clarification of equivocal invocations of the right to remain silent. In *Christopher v. Florida*, 824 F2d 836 (D) (11th Cir. 1987), the court reiterated that under *Miranda* and its progeny, police are required to terminate an interrogation if the suspect " 'indicates, in any manner, at any time . . . during questioning that he wishes to remain silent.' [Cit.]" Following an equivocal indication of the desire to remain silent,

> officers may ask questions designed to clarify whether the suspect intended to invoke his right to remain silent. [Cits.] The rule, however, permits "clarification," not questions that

. . . are designed to, or operate to, delay, confuse, or burden the suspect in his assertion of his rights.

(Footnotes omitted.) Id. at 842. This Court in *Hatcher* noted that under *Christopher v. Florida*, the equivocal attempts by Hatcher to invoke his right to remain silent "should have limited further questioning to clarifying Hatcher's intentions." Id. at 277, fn. 2. See also *Tankersley v. State*, 261 Ga. 318 (2) (b) (404 SE2d 564) (1993).

Like this Court in *Hatcher*, I would apply the holding in *Christopher v. Florida* here and hold that an equivocal invocation of the right to remain silent must be treated comparably to an equivocal invocation of the right to counsel, requiring clarification by police before further questioning is appropriate. Thus, in response to Lucas's statement that "my lawyer told me, the one I talked to, not to say nothing," the officer should only have sought clarification of Lucas's statement, even if it amounted to nothing more than the simple question "whether [Lucas] wanted to stop talking." Id. at 842. Applying the principle in *Christopher v. Florida*, I conclude that the officer's continued questioning of Lucas without clarification of his equivocal request "constituted an unlawful continuation of the interrogation, and not permissible interrogation." Id. Therefore, because all subsequent questioning of Lucas by the police officers should have been suppressed, I concur with the majority's judgment.

I am authorized to state that Justice Sears joins this special concurrence.

DECIDED OCTOBER 30, 2000.

*John B. Sumner*, for appellant.

*Garry T. Moss, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.