A08A2426. SMITH v. THE STATE.

(675 SE2d 310)

ADAMS, Judge.

A Chatham County jury convicted Michael G. Smith of kidnapping, aggravated assault, and burglary. On appeal, Smith claims that the trial court erred in denying his motion for a mistrial after the State, without complying with Uniform Superior Court Rule 31.3, introduced evidence of an independent act placing his character into issue. We agree.

Viewed in the light most favorable to the jury's verdict, the evidence shows that Eric Peden met Rodney Milledge through work. Peden and Milledge socialized and Milledge went to Peden's apartment two or three times. They discussed the possibility of Milledge moving in with Peden.

On October 8, 2005, at approximately 11:30 p.m. to 11:45 p.m., Peden heard a knock at the door. Peden looked through the peephole and did not recognize the man outside. After Peden opened the door, the man put a gun to Peden's forehead and backed him up inside the apartment. Two other men came in behind the gunman. The men asked Peden, "where's Rod?" and "where's the dope?"

When Peden responded that he had not seen Rod and had no dope in his home, the men threatened to shoot Peden and his dog. The gunman and another intruder went into the spare bedroom and began "rifling through things." The third man grabbed Peden's Xbox game system from the entertainment center and then went into the kitchen. When Peden realized the intruders could not see him he ran out the door and down the back stairs. He heard footsteps and "stomping" noises coming from the apartment after he left, and as he was coming around the back of the apartment building, Peden saw the three men get into a white Dodge Intrepid automobile and speed off.

Several days later, Peden and Milledge had a heated telephone conversation. Peden was upset because the men who had entered his home had been looking for Milledge. Milledge was upset because their mutual employer had learned about the incident and fired him. Milledge called Peden back later that day and told Peden "I know who did it," and "I gotta get [him] off the street." Milledge then contacted police and told them that he believed that Smith was responsible for the incident. A detective came to Peden's workplace and presented him with a photographic lineup. Peden identified Smith as the person who put a gun to his head.

Christy Burns, Smith's girlfriend, testified at the trial. Burns owned a white Dodge Intrepid. According to Burns, on October 8, 2005, she and Smith got into an argument at her home. When she got out of the shower, she noticed that the front door was open, and her car and cell phone were gone. Smith, who later admitted taking the car, returned the vehicle approximately 4:30 the next morning, at which time he was not very responsive and his eyes were dilated.

1. During her redirect examination of Burns, the prosecutor established that two to three weeks before the incident at Peden's home, Milledge appeared at Burns's residence carrying a gun and looking for Smith, who hid in the closet. Defense counsel objected when the prosecutor asked Burns to disclose what Smith told her about why Milledge was unhappy. At a bench conference, defense

YALE LAW LIBRARY

counsel argued that the line of questioning was irrelevant and that the defense had purposely stayed away from evidence which showed that Smith had engaged in a prior bad act. The trial court allowed the prosecutor to continue to question Burns, who disclosed that Milledge was unhappy because Smith and his friend Courtney Collins had stolen cocaine from Milledge. Burns then testified that Smith had told her "[t]here was cocaine taken out of a green Cadillac and that Courtney Collins had actually went into [Milledge's] home and taken a laptop computer."

Immediately following Burns's testimony and through a motion filed the next morning, the defense moved for a mistrial on the grounds, among other things, that the evidence of a prior bad act had improperly injected Smith's character into evidence, and that the act had not been introduced as a similar transaction because the procedures outlined in *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), were not followed. Smith restates this argument on appeal. The State responds that Smith opened the door to evidence of the relationship between Milledge and Smith, and that the evidence was relevant to show that relationship. We agree with Smith.

"Evidence that is relevant and material to an issue in the case is not made inadmissible because it incidentally places the defendant's character in issue." (Citation and punctuation omitted.) *Borders v. State*, 285 Ga. App. 337, 340 (2) (646 SE2d 319) (2007). See *Holcomb v. State*, 268 Ga. 100, 104 (4) (485 SE2d 192) (1997) (evidence that one of the victims stole drugs from the defendant showed defendant's motive in an alleged felony murder and armed robbery, and was admissible). Arguably, evidence that Milledge went to Burns's residence with a gun looking for Smith shed light on the relationship between Smith and Milledge — the person who alerted police that Smith was likely involved in the invasion of Peden's home. But the evidence objected to by the defense showed Smith stole Milledge's cocaine, as Burns's testimony reflects an admission by Smith as to that fact. This is evidence of a similar, but independent, offense: a theft by the defendant from a third party weeks before the crime at issue. A defendant is "entitled to be tried for the offense charged in the indictment, independently of any other offense not connected with the transaction upon which the indictment was based." *Williams v. State*, 261 Ga. at 641-642. Before introduction of such independent acts into evidence, Uniform Superior Court Rules 31.1 and 31.3 provide for notice by the State and a hearing before the trial court, at which time the three showings outlined in *Williams* must be made. Pretermitting whether the evidence was otherwise admissible, there was no such notice or hearing in this case. See *Wall v. State*, 269 Ga. 506, 509 (2), n. 4 (500 SE2d 904) (1998) (noting that notwithstanding prior difficulties between the defendant and the

victim, "[t]estimony concerning prior difficulties between the defendant and one not the victim of the crime for which the defendant is being tried remains subject to USCR 31"); *Flournoy v. State*, 221 Ga. App. 96, 97 (1) (470 SE2d 488) (1996) ("*[o]nce the three affirmative showings* required by *Williams* . . . have been met, evidence of similar transactions is admissible even though the defendant's character is incidentally placed in evidence thereby") (citations omitted; emphasis supplied). Compare *Smith v. State*, 274 Ga. App. 852, 853-854 (1) (619 SE2d 358) (2005) (testimony explaining the reason for appellant's arrest need not be excluded simply because it incidentally shows the commission of another crime).

The State suggests that the introduction of the evidence nevertheless falls within the principle that a defendant may not seek "to exclude further details concerning the same area of inquiry he had introduced. . . . [O]ne cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." (Citation and punctuation omitted.) *Borders v. State*, 285 Ga. App. at 340-341 (2). Here, however, the defense neither induced error on the part of the trial court nor opened the door to introduction of the prior act.

In a bench conference during Peden's cross-examination, defense counsel announced her intention to show that the relationship between Peden and Milledge involved drugs, and that this relationship went to Peden's motives in naming her client as his assailant. The trial court indicated that if the defense wished to show the relationship between Peden and Milledge, the State would be allowed to demonstrate a relationship between Milledge and Smith. Defense counsel subsequently asked Peden if he had gotten drugs from Milledge, and Peden admitted that Milledge had given him "weed" and cocaine.

In light of the evidence showing that Milledge alerted the police to Smith and the defense's decision to explore the relationship between Milledge and Peden, the relationship between Milledge and Smith was a relevant issue. But the State does not show, nor can we conclude, that the defense, by making the relationship between Milledge and Smith relevant, placed Smith's character in issue so as to relieve the State from complying with USCR 31.3. See USCR 31.3 (D) ("[i]f upon the trial of the case the defense places the defendant's character in issue, evidence of similar transactions or occurrences . . . shall be admissible, the above provisions notwithstanding"). Furthermore, defense counsel did not ask Burns about Milledge's trip to her residence during cross-examination and objected earlier when, during Milledge's testimony, the State pursued questions that led Milledge to disclose that there had been a burglary at his

YALE LAW LIBRARY

home.[1] The defense neither opened nor facilitated the line of inquiry which ultimately led to the evidence of the previous crime. Compare *Borders v. State*, 285 Ga. App. at 340-341 (2) (defense counsel questioned victim and victim's mother about "fights" between the defendant and the victim's mother, and this opened the door to introduction of the victim's statements that she was afraid of the defendant because she had seen him hit her mother); *Rider v. State*, 207 Ga. App. 519 (1) (428 SE2d 423) (1993) (defense counsel asked victim about other fights with the defendant and opened the door to additional inquiry into the other fights by the State on redirect).

In light of the foregoing, evidence of Smith's bad character was improperly placed before the jury. The evidence was extremely prejudicial and the evidence of Smith's guilt was not overwhelming.[2] Accordingly, the trial court erred in failing to grant a mistrial. See *Johnson v. State*, 275 Ga. 508, 510-511 (3) (570 SE2d 292) (2002).

2. Smith also contends the trial court improperly allowed the State to inject his character into issue through testimony that he was a drug user.[3] Specifically, Smith complains that the trial court allowed the prosecutor to ask Milledge and Burns whether they had known Smith to use drugs. We disagree.

The evidence that Smith used drugs was not an independent act subject to notice and hearing under USCR 31. Notably, the evidence of his drug use was not a similar transaction to the kidnapping, aggravated assault, and burglary charges arising out of the alleged home invasion. See *Sterling v. State*, 267 Ga. 209, 211 (4) (477 SE2d 807) (1996). It was also directly relevant and material to Smith's motives in committing the crime. See *Pitts v. State*, 260 Ga. App. 553, 563 (8) (b) (580 SE2d 618) (2003). For example, the State attempted to establish that Smith's change in appearance before the crime showed "fiending," or a longing for drugs. The home invaders asked about the "dope." The evidence of Smith's drug use can be contrasted to the evidence at issue in Division 1, supra, which showed a prior burglary in a prosecution for burglary and was only indirectly relevant to whether Smith committed the crime at issue. The trial court did not abuse its discretion in admitting the evidence of Smith's drug use. See *Young v. State*, 280 Ga. 65, 68 (7) (623 SE2d

---

[1] Milledge did not name Smith as the thief or disclose the exact nature of the items stolen.

[2] Evidence favorable to the defense included testimony that Smith had previously been to Peden's apartment complex, that Smith told Burns on one occasion that he was with Peden and Milledge, and that Milledge kept a shoe box of cocaine and money at Peden's apartment.

[3] Smith also claims that during his testimony a detective improperly injected Smith's character into evidence by alerting the jury to Smith's previous detention in jail. This occurrence is unlikely to be repeated at a new trial, and we do not address it.

491) (2005) (evidence showing that defendant was using crack cocaine before the crime went to proof of motive and was not inadmissible because it incidentally placed defendant's character in issue); *Johnson v. State*, 260 Ga. 457, 458 (2) (396 SE2d 888) (2005) (evidence that defendant was a drug dealer was relevant to motive and was not inadmissible); *Jones v. State*, 283 Ga. App. 812, 813 (1) (642 SE2d 887) (2007) (defendant's drug use relevant to show underlying family friction that led to defendant's assault on his mother and brother); *Sharif v. State*, 272 Ga. App. 660, 661-662 (2) (613 SE2d 176) (2005) (that defendant was a drug dealer was relevant to defendant's alleged motive in shooting the victim).

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 12, 2009.

*Gabrielle A. Pittman, Michael L. Edwards, Jennifer R. Burns,* for appellant.

*Spencer Lawton, Jr., District Attorney, Isabel M. Pauley, Assistant District Attorney*, for appellee.