## A10A0081. CANTERA v. THE STATE.
(696 SE2d 354)

MILLER, Chief Judge.

Following a jury trial, Vincente R. Cantera was convicted of voluntary manslaughter (OCGA § 16-5-2), possession of a firearm during the commission of a crime (voluntary manslaughter) (OCGA § 16-11-106), aggravated assault (OCGA § 16-5-21), possession of a firearm during the commission of a crime (aggravated assault) (OCGA § 16-11-106), and concealing the death of another (OCGA § 16-10-31). On appeal, Cantera challenges the sufficiency of the evidence, and contends that the trial court erred (i) in overruling his objection to an independent act which impermissibly placed his character in issue, (ii) in charging the jury on aggravated assault, (iii) in failing to charge the

---

[16] See *Phagan v. State*, 268 Ga. 272, 277 (3) (b) (486 SE2d 876) (1997) (admission of videotape).

jury on the affirmative defenses of self-defense and justification, and (iv) in merging Cantera's convictions of voluntary manslaughter and possession of a firearm during the commission thereof with his convictions of aggravated assault and possession of a firearm during the commission of that crime, for purposes of sentencing. Finding that the trial court did not enter judgments of conviction on the voluntary manslaughter and related firearm counts and discerning no error otherwise, we affirm.

> When a defendant contends that there was insufficient evidence to convict him, we review the evidence in the light most favorable to the verdict, and we neither assess witness credibility nor weigh the evidence. The defendant no longer enjoys the presumption of innocence. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.

(Citations and punctuation omitted.) *Nelson v. State*, 277 Ga. App. 92, 93 (1) (625 SE2d 465) (2005).

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the evidence shows that at approximately 4:00 p.m., on August 14, 2000, Cantera told his son, Efrain Cantera, that he had shot and killed Jose Luis Guerrero, a neighbor to whom Cantera had earlier disclosed that he had his wife murdered while on a trip to Mexico. That evening, Cantera drove Efrain and a man whom Efrain identified only as Oscar to an Echols County hunting property which Cantera leased. There, at gunpoint, Cantera forced Efrain and Oscar to bury the victim. A week later Cantera drove to Florida and gave away a Colt .38 Super handgun.

Peuvlito Cantera ("Peuvlito"), Cantera's daughter, saw the victim at Cantera's home on the morning he disappeared. When she returned at approximately 3:00-3:30 p.m. that day, Peuvlito observed Cantera inside the victim's trailer. Cantera appeared to be putting some of the victim's belongings into a bag and burning other items outside. About a month later, Cantera explained what he had been doing, telling Peuvlito that he killed the victim for "our protection."

Gilberto Garay Cantera ("Garay"), Cantera's nephew, worked with the victim, and had lived with Cantera and the victim previously. Cantera met with Garay at about noon of the day in issue, told him that he killed the victim and sought his assistance in burying him. Although Garay went with Cantera and Oscar to do so, he did not accompany them to the body's location. Instead, acting on Cantera's instructions, Garay dropped Cantera and Oscar off in the

vicinity of the body and returned to Cantera's sister's house to await a pick up call from Cantera. When the call came, Cantera explained that it was too hot that day and he would bury the body later. Cantera and Oscar then drove Garay home. It was then approximately 1:00 p.m.

After he contacted the authorities seven months later, Efrain led Echols County Chief Deputy Sheriff Randy Courson to the victim's body. On the basis of a comparison of known and unknown fingerprints, Lieutenant Glenn Hutchinson of the Thomas County Sheriff's Office positively identified the victim as Luis Guerrero. Dr. Anthony Clark, a medical examiner employed by the Georgia Bureau of Investigation, concluded that the victim died of five gunshot wounds fired from a .38 caliber or larger weapon. Cantera's arrest followed.

1. Except with respect to concealing the death of another, Cantera contends that the evidence was insufficient to support his remaining convictions, arguing (i) that he was improperly convicted based on his admission to Peuvlito that he killed the victim, rather than his subsequent explanation that he did so to protect the family (see *Terry v. State*, 243 Ga. 11, 12 (1) (252 SE2d 429) (1979) (defendant's explanation of homicide must be accepted where the State relies on no other evidence to show the intent to commit the crime charged)), and (ii) that the State failed to prove venue as to the offenses of which he was convicted. The State concedes that there is no evidence of the offense of voluntary manslaughter. No evidence of voluntary manslaughter having been introduced at trial, there was no evidence of the related offense of possession of a firearm during the commission of such offense. Since the trial court did not enter judgments of conviction or sentences on the voluntary manslaughter and related firearm counts, "any issues concerning [those] counts of the indictment are moot and will not be considered. [Cit.]" *Funderburk v. State*, 276 Ga. 554, 555 (1) (580 SE2d 234) (2003).

Given that Cantera's explanation of the killing was inconsistent with and not explanatory of the other direct and circumstantial evidence, the jury was permitted to reject such explanation and convict on the remaining evidence. *Terry*, supra, 243 Ga. at 13 (1). Since the evidence otherwise shows that venue was properly proven as well as the commission of aggravated assault with a deadly weapon, we affirm Cantera's convictions of aggravated assault and possession of a firearm during the commission of such crime.

(a) Sufficiency of the Evidence. Citing Peuvlito's testimony to such effect, Cantera argues that he killed the victim in order to protect the family. Such explanation of the killing to the contrary notwithstanding, Efrain testified on direct that Cantera told him that he shot the victim once; that the victim ran; that Cantera

pursued; that although the victim begged for his life, Cantera shot him again; and that Cantera later gave a Colt .38 Super caliber revolver away in Florida. There also was forensic evidence which indicated that Cantera fired three more rounds into the victim's body, each round of a .38 or larger caliber. "[W]here the defendant's statement is not consistent with and does not explain the other direct and circumstantial evidence[,]" as here, the rule requiring that the defendant's exculpatory explanation of a homicide must be accepted does not apply. *Terry*, supra, 243 Ga. at 13 (1).

(b) Venue. Further, the uncontradicted evidence at trial was that the victim was shot and buried on a hunting property in Echols County, as alleged. See generally OCGA § 17-2-2. Thus, the State's proof of venue was sufficient. The question of venue was for the jury to decide, and "its decision . . . will not be set aside where there is any evidence to support it." *Johns v. State*, 239 Ga. 681, 682 (1) (238 SE2d 372) (1977).

Given the foregoing, a rational trier of fact could have found beyond a reasonable doubt that Cantera committed the charged offenses at issue. OCGA §§ 16-5-2, 16-5-21, 16-11-106; *Nelson*, supra, 277 Ga. App. at 93 (1).

2. Cantera argues that the trial court erred in denying his motion for a mistrial because evidence that he killed his wife was not introduced as a similar transaction pursuant to *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991)[1] ("*Williams I*") and Uniform Superior Court Rules 31.1 and 31.3 — thus improperly injecting his character into evidence. We disagree.

"The abuse of discretion standard applies to the review of the denial . . . of a motion for mistrial. [Cit.]" *Underwood v. State*, 218 Ga. App. 530, 534 (3) (462 SE2d 434) (1995). And pretermitting the applicability of *Williams I* and USCR 31.1 and 31.3 in the instant circumstances,[2] "a defendant may not seek to exclude further details concerning the same area of inquiry he . . . introduced. . . . One cannot complain of a result he procured or aided in causing, and induced error is not an appropriate basis for claiming prejudice." (Citations and punctuation omitted.) *Smith v. State*, 296 Ga. App.

---

[1] The State is required to make three affirmative showings before similar transaction evidence can be introduced. "First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter." *Williams v. State*, 273 Ga. App. 213, 216 (2) (614 SE2d 834) (2005).

[2] "Before introduction of such independent acts into evidence, [USCR] 31.1 and 31.3 provide for notice by the State and a hearing before the trial court, at which time the three showings outlined in *Williams* [*I*, supra,] must be made." *Smith v. State*, 296 Ga. App. 608, 610 (1) (675 SE2d 310) (2009).

608, 611 (1) (675 SE2d 310) (2009); see also USCR 31.3 (D) ("If upon the trial of the case the defense places the defendant's character in issue, evidence of similar transactions or occurrences . . . shall be admissible, the above provisions [to the contrary] notwithstanding.").

During cross-examination of Efrain, Cantera's counsel established that Efrain and Peuvlito were involved in litigation against Cantera to establish that they were entitled to the proceeds of a $100,000 insurance policy which Cantera had maintained on his wife's life prior to her death in Mexico. Cantera's counsel also brought out the fact that Cantera had filed an answer in the litigation which denied that he killed his wife and further asserted his need for the money. The door having thus been opened on cross-examination, the prosecutor thereafter asked Garay on direct examination if he were aware of the circumstances involving the death of Cantera's wife. Garay replied in the affirmative, indicating that the victim told him Cantera had killed his wife which Cantera later confirmed, telling him "he had hired two people to kill his wife for the insurance money, and they [had] done a good job. . . ." The trial court's denial of Cantera's motion for a mistrial followed.

Cantera thus introduced the family fight over insurance proceeds which were payable on the death of his wife in an effort to undercut the credibility of his children, who testified that he admitted killing the victim. Given the foregoing, the trial court did not abuse its discretion in denying Cantera's motion for a mistrial after the prosecutor elicited Cantera's prior admissions that he had his wife killed in order to show that Cantera's children were involved in litigation over the insurance policy based on a legitimate desire to ensure that their father was not rewarded for taking their mother from them. *Underwood*, supra, 218 Ga. App. at 534 (3); *Smith*, supra, 296 Ga. App. at 611 (1).

3. Cantera contends that the trial court erred in failing to charge the jury on simple assault as an essential element of the offense of aggravated assault. It is well settled that a charge on simple assault is not required to make a charge on aggravated assault complete. *Sutton v. State*, 245 Ga. 192, 193 (2) (264 SE2d 184) (1980). Accordingly, the trial court's failure to include a charge on simple assault in its charge on aggravated assault was not error.

4. Cantera argues that the trial court erred by failing to sua sponte charge the jury on the affirmative defenses of self-defense and justification. We are not persuaded.

While "the failure to give an unrequested charge is not error, [as here,] it is well settled in this State that the failure to give a charge on a defendant's sole defense in a criminal case, even without a request, constitutes reversible error if there is some evidence to

support the charge." (Citations and punctuation omitted.) *Parks v. State*, 281 Ga. App. 679, 682 (4) (637 SE2d 46) (2006).

Cantera's claims to the contrary notwithstanding, there is no evidence in the record to support the instant charges. While Peuvlito testified that Cantera, a month after the victim's death, claimed that killing the victim was necessary to protect the family, there was no evidence showing that Cantera was in fear of or was defending himself when he first shot the victim. Instead, the evidence established that Cantera shot the victim repeatedly after initially wounding him and while the victim begged for his life. Under these circumstances, the failure to sua sponte charge self-defense and justification was not error. *Merneigh v. State*, 242 Ga. App. 735, 739-740 (5) (531 SE2d 152) (2000).

5. Given our disposition of Division 1 with respect to Cantera's convictions of voluntary manslaughter and the related firearm possession charge as merged with the lesser charges of aggravated assault and its related possession of a firearm charge for purposes of sentencing, we need not consider Cantera's remaining claims of error.

In light of the foregoing, the judgment of the trial court is affirmed.

*Judgment affirmed. Phipps, P. J., and Johnson, J., concur.*

DECIDED JUNE 3, 2010 — 

*G. G. Kunes, Jr.*, for appellant.
*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.