46271. HATCHER v. THE STATE.
(379 SE2d 775)

GREGORY, Justice.

Ricky Dane Hatcher pled guilty in Cobb County to an indictment charging him with the murder of Lisa McMichen and her mother, Francis McMichen. A sentencing hearing was conducted before a jury and Hatcher was sentenced to death for the murder of Lisa McMichen, and to life imprisonment for the murder of Francis McMichen.[1]

Lisa McMichen and her daughter Tonya lived with Hatcher until December 3, 1987, when they left after a violent argument and spent the night with Lisa's mother. Lisa and Tonya McMichen returned the next day for their belongings. Another argument ensued. When Hatcher's mother, who had just been released from treatment for alcohol dependency, attempted to intercede, Hatcher threatened to kill both her and Lisa McMichen. Hatcher then left. Lisa and Tonya McMichen left soon thereafter and returned to Francis McMichen's apartment.

Hatcher spent the afternoon drinking with his friends and bemoaning his situation. He was "upset" and "tired of the way things were going," and he had a "belly full" of the way Lisa, Francis, and Tonya McMichen were "doing," and he threatened to kill them all.

At 3:00 p.m., Hatcher went to Francis McMichen's apartment. Tonya testified that she was in a bedroom when she heard her grandmother call her name and tell her to call the police. Tonya went to the door of the bedroom and saw her grandmother trying to close the front door of the apartment to prevent Hatcher from entering.

---

[1] Hatcher was arrested December 4, 1987. He entered his plea of guilty June 24, 1988, and a sentencing trial began that day and concluded July 1, 1988. A motion for new trial was filed July 23, 1988. The motion was heard September 8, 1988, and denied the next day. The case was docketed in this court on October 6, 1988. Oral arguments were heard January 9, 1989.

Hatcher forced his way in.

Hatcher claimed afterward that he merely had come for twenty dollars Lisa McMichen owed him and for his telephone book, which Lisa had taken, and on which he had written certain numbers important to his business.

Tonya ran to the bathroom and locked the door. She heard Hatcher say that no one would "call the damn police on him." Soon afterward, Tonya heard a shot and then another. She heard the sound of running footsteps and then another shot.

After Hatcher left, Tonya went to the telephone to call the police, but the line had been cut. She went next door and called.

Francis McMichen was shot once in the back of the head. Lisa McMichen was shot once in her left side and once in the back of the head.

The jury found the presence of two statutory aggravating circumstances to support the death sentence for the murder of Lisa McMichen: (1) "The offense of murder was committed while the offender was engaged in the commission of burglary," and (2) "The offense of murder was outrageously or wantonly vile, horrible or inhuman in that it involved torture, [and] depravity of mind." See OCGA § 17-10-30 (b) (2) and (b) (7).

1. Hatcher's present attorney was appointed to represent him at the post-trial proceedings and on appeal. At the hearing on the motion for new trial, and again on this appeal, Hatcher has contended his trial attorneys were ineffective because their remarks during voir dire effectively conceded the issue of guilt, leaving him (he now claims) "no alternative but to plead guilty."

Neither Hatcher nor his trial attorneys testified at the hearing on the motion for new trial. See *Dawson v. State*, 258 Ga. 380 (3) (369 SE2d 897) (1988). The transcript of the guilty plea hearing, including Hatcher's own testimony, supports the trial court's determination that Hatcher's plea of guilty was voluntarily entered. Compare *Morrison v. State*, 258 Ga. 683 (1) (353 SE2d 29) (1988). Hatcher has failed to show that he felt compelled to plead guilty because of any action or inaction of his trial attorneys. Hence, even assuming arguendo some deficient attorney performance in the conduct of the voir dire, Hatcher has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., that he would not have pled guilty. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Therefore, he has failed to show ineffectiveness of trial counsel.

2. Hatcher was interrogated the evening of December 4, 1987 (the date the murders occurred), after he told the police he wanted to confess. The first interview began at 5:07 p.m. Hatcher related some of the events leading up to his visit to Francis McMichen's apartment,

and then began to describe what happened. He stated that Francis McMichen had seized his gun after it fell out when he pushed open the apartment door, and that he had "grabbed it." Then, he stated:

> It went off. Oh God. I don't know where it hit her, but it's a 44 magnum. And Lisa, she gets extremely upset at everything. Oh my God. She ran, uh, Lord, I don't know. I don't want to talk about it no more.

The interrogation ceased. Hatcher asked for and received a cup of coffee. He was asked if he wanted to lie down, and he answered in the negative, and then indicated his willingness to proceed with the interrogation. After a ten-minute break, the interrogation resumed. It concluded at 5:39 p.m.

Five hours later, Hatcher was re-interrogated. A few minutes into the interrogation, Hatcher stated that he did not "want to talk about it." He was told to "just take it easy and control yourself," and the interrogation continued. Later, when asked about the first shot, Hatcher asked, "Why do you have to put me through all that?"

After some colloquy concerning the importance of the statement, the interrogators again asked about the first shot, and then asked "about Lisa." At this point, Hatcher stated, "I don't want to talk about it no more, please. No, no, no." The interrogators did not respond to this assertion except to continue the interrogation, which lasted another 30 minutes.

Hatcher contends here, as he did below, that his right to cut off questioning was not "scrupulously honored," and that his statements should have been suppressed.

In *Miranda v. Arizona*, 384 U. S. 436, 473-74 (86 SC 1602, 16 LE2d 694) (1966), the U. S. Supreme Court held:

> If the [person in custody] indicates *in any manner*, at any time prior to or *during questioning*, that he wishes to remain silent, the interrogation must cease. [Emphasis supplied.]

The Court later explained:

> Through the exercise of his option to terminate questioning [a person in custody] can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. . . . [T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his "right to cut off questioning" was "scrupulously honored."

*Michigan v. Mosley*, 423 U. S. 96, 103 (96 SC 321, 46 LE2d 313)

(1975).

Although the right to silence is not protected by a per se rule of "permanent immunity" against further police-initiated interrogation, id., 423 U. S. at 102, nevertheless, "a suspect's request to cut off questioning serves as a complete bar to any questioning [initiated by the police] . . . for a 'significant period of time' after the request." *Christopher v. Florida*, 824 F2d 836, 844 (11th Cir. 1987).

The trial court did not err by allowing the admission of Hatcher's first statement. When Hatcher stated he did not "want to talk about it" anymore, the police immediately halted the interrogation. The evidence authorizes a finding that after a break, Hatcher stated that he was ready to continue. Compare *Holiday v. State*, 258 Ga. 393 (3) (369 SE2d 241) (1988).

However, we agree that Hatcher's right to cut off questioning was not "scrupulously honored" during the second interrogation. At least three times during the second interrogation, Hatcher attempted to stop the questioning. Even if the first two instances were equivocal, the third was not.[2] When Hatcher stated, "I don't want to talk about it no more please. No, no, no," the interrogation should have ceased.[3]

The trial court erred by finding the second statement to be admissible. This error does not affect the conviction, because by his plea of guilty Hatcher waived any such issue affecting his conviction. The statement was an important part of the state's sentencing-phase evidence, however, and we do not find that Hatcher waived the use of an inadmissible statement at the sentencing phase of the trial, or that the error was harmless. His death sentence must therefore be reversed.

3. The evidence supports the jury's finding that the offense of murder was committed while the offender was engaged in the commission of burglary.

A person commits the offense of burglary when, without authority and with the intent to commit a *felony* or *theft* therein, he enters . . . the dwelling house of another . . . or

---

[2] Under *Christopher v. Florida*, supra, even these equivocal attempts should have limited further questioning to clarifying Hatcher's intentions. If the request is equivocal, the police "may ask questions designed to clarify whether the suspect intended to invoke his right to remain silent," but they may not simply continue the interrogation. Id. at 842.

[3] We note that at least one of the interrogating officers apparently thought only the suspect's invocation of his *right to counsel* required halting the interrogation. At the hearing on the admissibility of the statements, this officer was asked if he would terminate an interview if the suspect indicated "he didn't want to give any further statements or didn't want to talk about it any further. . .?" The officer responded that it would depend "on how it's said." When pressed to give an example of "how it would be said" to terminate the interview, the officer stated: "If he says I don't want to talk about that, I want to see an attorney, I want to see counsel, then, of course, we'd terminate the interview."

other such structure designed for use as the dwelling of another. . . .

OCGA § 16-7-1. The evidence, although in conflict, authorizes a finding that the defendant forced his way into Francis McMichen's apartment intending to commit the felony of murder "therein." See *Childs v. State*, 257 Ga. 243 (15) (24 c) (357 SE2d 48) (1987).

4. The evidence does not support the jury's finding that the murder of Lisa McMichen was outrageously or wantonly vile, horrible or inhuman in that it involved torture and depravity of mind. Compare *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980); *Whittington v. State*, 252 Ga. 168 (9 b) (313 SE2d 73) (1984); *Phillips v. State*, 250 Ga. 336 (297 SE2d 217) (1982). See also cf. *Davis v. State*, 255 Ga. 588 (3) (c) (340 SE2d 862) (1986).

5. Hatcher's conviction of two counts of murder is affirmed. The death sentence imposed on Count 2 is reversed.

*Judgment affirmed in part, reversed in part. All the Justices concur, except Marshall, C. J., and Smith, J., who concur in the judgment but dissent as to Division 4.*

DECIDED MAY 25, 1989 —
RECONSIDERATION DENIED JUNE 22, 1989.

*Moore & Rogers, David P. Oliver, Stephen C. Steele,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.