## A99A0713. LASSITER v. THE STATE.
### (515 SE2d 636)

BARNES, Judge.

Following his indictment for two counts of armed robbery and two counts of aggravated assault, Ulysse Lassiter was tried before a jury and found guilty of all charges. Lassiter appeals, contending the prosecutor improperly commented on his failure to testify and that there was insufficient evidence to support his convictions. We disagree and affirm.

The record shows that a masked gunman robbed a Taco Bell after its usual 1:00 a.m. closing time. At the time of the robbery, only two Taco Bell employees remained in the store. Joseph Harris was in the dining area while Tonya Hall, the manager, was completing paperwork in the office located in the rear of the store. Hall heard a loud crash while talking on the telephone with her boyfriend, a police officer, and saw a masked man holding a gun to Harris's head. As the gunman directed Harris toward the back of the store, Hall "freaked out," hung up the phone, and tried to close the office door. The gunman threw Harris to the ground, which prevented Hall from completely closing the door, and told Hall that he would "blow him away" if she shut the door.

When Hall opened the door, the gunman put the gun to her head and told her that she had "five seconds to open the safe or he was going to blow [her] away." After Hall explained that she could not open the safe because it was on time-lock, the gunman ordered her to open the cash registers in the front of the store. The gunman then

placed cash from the register Hall opened into a dark blue book bag.

After obtaining the money from the cash register, the gunman held a gun to Hall's head, led her to the rear of the store and told her that "his ride was coming, that [she] had to hurry, that [she] had five seconds to open the safe or he was going to blow [her] away." When Hall told him again that she could not open the safe, the robber took her purse, placed it in his book bag, ordered her to lie face down on the ground, and ran out of the store. Approximately two minutes later, Harris called the police.

Hall testified that the gunman was wearing dark blue or black pants, a blue hooded sweatshirt and two blue and white bandannas over his face. One of the bandannas covered his forehead and the other covered his face from the bridge of his nose down. As a result, only his eyes were visible. Hall described the gun as "a chrome-looking, shiny silver gun."

Hall's boyfriend, Officer Tim Edison, testified that when he was talking to Hall around 1:25 a.m., he heard the sound of glass breaking and screaming in the background. When the phone went dead, Officer Edison assumed there might be a robbery in progress and notified the police dispatcher.

Officer Steve Brown responded to a 1:29 a.m. dispatch of an armed robbery in progress at the Taco Bell and arrived approximately two minutes later. Officer Brown parked his marked police car a few feet into the driveway of the Taco Bell, removed a .12 gauge shotgun from his trunk and started walking toward the restaurant. As Officer Brown rounded a corner of the restaurant, he saw the gunman leaving the restaurant through a shattered side door. He had brief eye-to-eye contact with the gunman, who ran west toward the rear of an adjacent Dairy Queen when Officer Brown raised his shotgun.

Officer Brown testified that the gunman was wearing black warm-up type jogging pants, a blue hooded warm-up top, black and white tennis shoes and a blue and white bandanna across his forehead. He was carrying a "duffel backpack type bag" and was holding a silver pistol. Officer Brown testified that the gunman's face was visible and that the lower portion of his face was not covered with a second bandanna.

When the gunman ran away, Officer Brown pursued him for a short distance and then returned to his car to enlist the aid of other officers. After briefing the other officers and interviewing the victims, Officer Brown resumed his search around commercial buildings to the west of the Taco Bell. He found the gunman's blue hooded top, two blue and white bandannas, a pair of gloves, the silver handgun, the book bag which contained money, and Hall's purse in shrubs near an office building approximately 800 feet away from the Taco Bell.

While Officer Brown was searching the area west of the Taco Bell, Deputy Brent Willis, a trained canine officer, arrived with his German Shepherd, Rolf, to track the gunman's scent. Rolf picked up the scent of a man who left the Taco Bell and tracked it to an area approximately 200 yards from the Taco Bell, where Deputy Willis discovered Lassiter sitting in a crouched position facing the other direction. Lassiter refused to come out of the woods, forcing Deputy Willis to release Rolf and forcibly apprehend him.

At the time he was apprehended, Lassiter was wearing black and white tennis shoes and black jogging pants. He was not wearing a shirt. When Officer Brown heard on his radio that a suspect had been apprehended, he went to the location of the police car where Lassiter was being held and identified him as the man he saw leaving the Taco Bell with a gun.

In a statement made after his arrest, Lassiter claimed that he had been given poison drink by some girls with whom he was partying. When he left the bathroom in their home, he "saw two men with guns so he took off running." "He ran a long way, but he did not know which way he ran or how far he ran. When he got tired, he stopped in some bushes, and the next thing he knew a dog was sniffing him and then he got arrested."

1. This evidence, though circumstantial, was sufficient to support Lassiter's convictions under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his remaining enumeration of error, Lassiter claims the State improperly commented on his right to remain silent during its closing argument. The record shows that defense counsel told the jury in his opening statement that the evidence would show that Lassiter told the police that he did not commit the crimes.

During the state's closing argument, the prosecutor stated:

Now, I anticipate Mr. Greenwald [the defense attorney] is going to come up — and I've tried cases with Mr. Greenwald, and he's a good lawyer, and he's done a good job in this case as he always does — and he can be very persuasive when it comes to argument. He knows what he's doing. I expect Mr. Greenwald is going to tell you that we don't have the videotape showing this crime from start to finish and that I haven't brought you any fingerprints in here on any of this evidence that links conclusively this Defendant to this crime. *And the only statement that you've got from this Defendant is not a confession of guilt but a complete denial of involvement* and that there was no evidence of this crime taken directly from the person of his client, Mr. Lassiter. I expect Mr. Greenwald to talk about all of that. And the rea-

son Mr. Greenwald will do that is because he wants to talk about what we don't have. He doesn't want you to think about what we do have.

Lassiter points to the emphasized portion of this argument to support his allegation that the prosecutor improperly commented on his failure to testify.

In *Ranger v. State*, 249 Ga. 315, 319 (2) (290 SE2d 63) (1982), the Supreme Court concluded that one of the following must be found before reversing based upon a prosecutor's improper comment on the defendant's failure to testify: (1) that the prosecutor intended to comment upon the defendant's failure to testify, or (2) that the remark was of such a character that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. We must look at the context in which the prosecutor's statement was made in order to determine if either of these two factors exist. *Christenson v. State*, 261 Ga. 80, 88 (7) (a) (402 SE2d 41) (1991).

When viewed in context, it is clear that the prosecutor in this case simply summarized Lassiter's pre-trial statement and outlined how he anticipated defense counsel would use this statement during closing argument. We find no error because there was no manifest intent by the prosecutor to comment on Lassiter's right to remain silent and the jury would not naturally and necessarily take it to be such a comment. Id.; *Thomas v. State*, 257 Ga. 24, 25 (3) (354 SE2d 148) (1987).

*Judgment affirmed. Blackburn, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 5, 1999.

*Darel C. Mitchell*, for appellant.
*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant District Attorney*, for appellee.