## A02A0415. DAVIS v. STATE OF GEORGIA.
### (568 SE2d 161)

SMITH, Presiding Judge.

Alphonso Davis appeals after a bench trial from the trial court's order denying his motion to suppress evidence and granting the State's forfeiture complaints as to five items of personal property seized when executing a search warrant for Davis's home and cars.[1] Davis raises ten enumerations of error, none of which we find meritorious. We therefore affirm the trial court's ruling and judgment.

Construed to support the judgment, the evidence presented showed that Davis was arrested in DeKalb County for trafficking in cocaine after a controlled buy was set up by DeKalb law enforcement officers using a confidential informant. DeKalb County officers had been informed by law enforcement officers in Greene County that a traffic stop there had revealed cocaine, the source of which was an apartment in DeKalb County. The person arrested in the Greene County traffic stop disclosed his source, and during the investigation of this information, DeKalb County officers became aware of Davis through a confidential informant. The informant told the officers that Davis had been delivering a kilo of cocaine to him twice a month for the past two years, described Davis, and informed the officers that Davis usually carried the cocaine "tucked in his pants or in a bag." The confidential informant stated that although Davis had several addresses, every time Davis made a delivery he came from Cobb County. The informant also told officers that Davis would make these deliveries using one of three vehicles: a green Jeep Cherokee, a red Volvo, or a BMW, and that in the past he had come armed and had displayed the weapon.

---

[1] A complaint for condemnation of a weapon was also filed, but Davis apparently did not appeal the condemnation of this item of personal property. The record shows that four complaints for condemnation were consolidated for trial, that the case was tried before a judge without a jury, and that the trial court did not rule on the motion to suppress until the end of the trial.

At the request of the officers, the informant telephoned Davis to set up the controlled buy, and the officers heard both sides of the conversation. The telephone call took place at about 5:00 p.m. on the evening of October 2, 1999. Davis agreed to deliver the cocaine at 6:30 that evening. The informant had been instructed to try to negotiate the price, but Davis refused to lower the price, stating: "You know how I deal. . . . I don't bargain." During that telephone conversation, Davis told the informant he would be coming from Cobb County. Davis arrived on time, in a green Jeep Cherokee. He left his vehicle, and the DeKalb County officers observed him proceed toward the informant's apartment building with his left hand "tucked" under his shirt so that it appeared he was holding something. The officers then confronted him, identified themselves, and arrested him. As they did so, "a brick wrapped in tape fell out." The package later tested positive for cocaine. When the DeKalb officers investigated the Jeep, they found a weapon and some correspondence that showed the Cobb County address. The Jeep was registered to Davis at that address. The DeKalb officers then contacted an investigator with the Cobb County Marietta/Cobb/Smyrna (MCS) narcotics unit and informed its officers what had transpired. A Cobb County investigator then applied for a search warrant for Davis's Cobb County apartment and the two other vehicles.

The warrant was obtained, and both DeKalb officers and MCS officers participated in executing it. In a bedroom in Davis's apartment, more than $112,000 in bills of all denominations was found inside one or more Crown Royal bags in a compartment in a television stand. A box of $1 bills was found in a guest room closet. Another gun also was found in the apartment, as were the titles to two of the automobiles. One hundred nineteen grams of cocaine were found in a bag in the glove box of a red Volvo registered to Davis, which was parked outside the apartment. A bulletproof vest and two blank money orders were also found in the Volvo. The officers also observed a silver BMW, which was registered to Davis. After seizing these items, the Cobb County officers initiated the forfeiture proceedings.

At the hearing, Davis was called by the State for cross-examination. He admitted he was the sole resident of the apartment. He invoked his Fifth Amendment privilege against self-incrimination with regard to all questions about the DeKalb County incident and arrest. Although he acknowledged ownership of all three vehicles, he denied any knowledge of the cocaine found in the Volvo and testified he had never dealt with drug dealers. He claimed he intended to use the money orders to pay his rent on the apartment, which was $802 plus "a late charge or something," and that the pistol found in the apartment belonged to his son, who left it in the closet during a visit

to keep it from his children. Although he claimed to have had somewhere between $35,000 and $60,000 income a year between a small business and a pension, the State showed that his tax returns reported annual income ranging from a maximum of approximately $15,000 to as little as a loss of $6,000. He claimed that the cash found in the apartment was his life savings. He stated that he kept it there because he had "had some problems at the bank before" and felt it was safer in his apartment. He also said, however, that he kept the bulletproof vest because he had been robbed several times at his previous home, which he still owned.

1. In five enumerations of error, Davis contends the trial court erred in denying his motion to suppress because the magistrate lacked probable cause to issue the search warrant. He argues that the affidavit in support of the application for the warrant was defective for a number of reasons: It contained mere conclusions; it did not contain any facts that allowed the magistrate to determine the reliability of the confidential informant or the information he provided; it withheld the confidential informant's "significant criminal history" and evidence that agents promised favors to the informant in exchange for his cooperation; it did not establish a "nexus" between Davis's acts in DeKalb County and his Cobb County apartment under the "totality of the circumstances" test; and the only verification of facts in the affidavit was that of "innocent details."

Because Davis does not argue these enumerations separately, we will address them together as well. In doing so, we note that in reviewing a trial court's ruling on a motion to suppress, we must be guided by three principles. First, the trial court sits as the trier of fact, and the trial court's findings on conflicting evidence are therefore analogous to a jury's verdict. The ruling should not be disturbed unless completely unsupported by evidence. Second, the trial court's decision with regard to credibility must be accepted unless clearly erroneous. Third, we must construe the evidence most strongly in favor of upholding the trial court's findings. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). In deciding whether probable cause is present to support the issuance of the warrant, the issuing magistrate must make "a practical, common sense decision" as to whether a fair probability exists that contraband or evidence of a crime will be found at a given place, "given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of the person supplying hearsay information." *Turner v. State*, 247 Ga. App. 775, 778-779 (4) (544 SE2d 765) (2001). This court must decide whether substantial evidence exists in the record to support issuance of the warrant. Id. The burden of proving the lawfulness of the warrant is on the State. This burden shifts to the movant only after the State has met its burden. In doubtful or marginal cases, the preference

accorded to warrants must prevail. *Davis v. State*, 266 Ga. 212, 213 (465 SE2d 438) (1996).

In this case, the affidavit did not consist of "mere conclusions." It recited that a confidential informant had advised an investigator employed by the Sheriff of DeKalb County that he could "set up a drug deal" with Davis for one kilo of cocaine, that Davis lived in a Cobb County apartment, and that he was using that location to store and sell cocaine. The confidential informant also stated to officers that Davis had several other vehicles and identified them as a red Volvo and a BMW. The informant's information was proved reliable when the controlled buy was arranged and Davis appeared at the buy's location at the arranged time with a kilo of cocaine. It was further verified by officers, who found correspondence and an insurance card in Davis's possession indicating a certain address in Smyrna, Cobb County, and checked with the apartment complex management and with a credit bureau, both of which verified the address as Davis's. In addition, the officers went to the apartment complex and observed both a red Volvo and a silver BMW parked near Davis's apartment. Both vehicles were registered to Davis.

The controlled buy supervised by law enforcement officers would alone have provided probable cause. *Turner*, supra at 779 (4). "Even if an officer cannot provide information regarding the veracity of an informant or the basis of his knowledge, a tip may be proved reliable if portions of the tip are sufficiently corroborated. [Cits.]" *State v. Wesson*, 237 Ga. App. 789, 791 (516 SE2d 826) (1999). Here, officers witnessed the delivery of the cocaine and confirmed the accuracy of many of the informant's predictions concerning Davis's behavior. This "sufficiently corroborated" the informant's information and showed its reliability. See *Gordon v. State*, 248 Ga. App. 776, 778 (546 SE2d 925) (2001); *Huntley v. State*, 244 Ga. App. 212, 213 (535 SE2d 270) (2000).

The information in the affidavit also established a "nexus" between the DeKalb County crime and Davis's Cobb County residence. Even had the officers found nothing at the DeKalb County crime scene tying Davis to the Cobb address, it is undisputed and admitted that Davis was living at the Cobb County apartment. "Under certain circumstances, it is reasonable for a police officer to infer that items will be found in a specific place. No more is required than a fair presumption; the probabilities are with the officer's conclusion." (Citations and punctuation omitted.) *Huntley*, supra at 213. And it is reasonable for an officer to presume that one committing a crime will return to his home after the crime, perhaps leaving incriminating evidence there. *McClain v. State*, 267 Ga. 378, 388-389 (11) (477 SE2d 814) (1996). Accord *DeYoung v. State*, 268 Ga. 780, 787-788 (7) (a) (493 SE2d 157) (1997).

Davis also seeks to invalidate the affidavit by alleging misconduct on the part of the affiant. He relies upon *Franks v. Delaware*, 438 U. S. 154 (98 SC 2674, 57 LE2d 667) (1978), to support his allegation that it was misconduct for the officers to have failed to mention in the affidavit that the informant had never himself visited Davis's Cobb County apartment, had a lengthy prior criminal history, and had made bond on the Greene County charge through the intervention of one of the officers, notwithstanding that he was on probation in Fulton County at the time.

Under *Franks*, however, the omissions must be material and evidence must be presented that the affiant deliberately misled the magistrate. Not every inaccuracy or omission satisfies these requirements.

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant.

*Franks*, supra at 171. See *Bickley v. State*, 227 Ga. App. 413, 414 (1) (a) (489 SE2d 167) (1997) ("for an omission to invalidate a warrant, the defendant must show that the omitted information was material to the determination of probable cause and that it was omitted for the purpose of misleading the magistrate. [Cit.]").

Here, the fact that the informant had never visited Davis's apartment was not material in light of the fact that the informant's information was independently verified by law enforcement officers. And Davis has utterly failed to demonstrate that the affiant deliberately misled the magistrate. The record simply does not disclose that the affiant had actual knowledge of the omitted evidence. In fact, a DeKalb County officer testified that although he was aware the informant had a criminal record, he did not know at the time of the arrest that he was on probation in Fulton County. The same officer, who Davis alleged improperly "intervened" to allow the informant to make bond, testified that the informant was given no consideration "at all" for his cooperation and that, in fact, the informant approached the officers after the arrest and informed them that he wished to cooperate. This officer also testified that he told the informant only that he would inform the district attorney's office of the informant's cooperation, but that "anything that happens to him from this point on is up to the judge and the prosecutor." These omis-

sions were not material. Moreover, if any material omissions were made, they could be explained as innocent mistakes.

*Robertson v. State*, 236 Ga. App. 68 (510 SE2d 914) (1999), relied upon by Davis, is distinguished on its facts. In *Robertson*, in addition to failing to disclose that the informant had a criminal history, the affidavit did not disclose that the informant told the officer he was enraged at one of the defendants, who had made a sexual advance toward the informant's girlfriend. In addition, the affiant was aware that the informant was on parole. Id. at 69-70. Those additional factors were not present in this case. The important factor is whether indicia of reliability of an undisclosed informant were presented. In this case, we are satisfied that such indicia were presented. The magistrate did not err in issuing the warrant.

2. In two enumerations, Davis complains that the evidence presented at trial did not support an order of condemnation. Forfeiture cases are civil proceedings, and the State need prove its case only by a preponderance of the evidence. *Bettis v. State of Ga.*, 228 Ga. App. 120, 121 (491 SE2d 155) (1997). Even circumstantial evidence is sufficient if it authorizes a reasonable inference that the seized property is subject to forfeiture. *Jones v. State of Ga.*, 249 Ga. App. 64, 67-68 (3) (547 SE2d 725) (2001). Once the State establishes a prima facie case, the burden shifts to the respondent to prove his status as an innocent owner by a preponderance of the evidence. *Mitchell v. State of Ga.*, 236 Ga. App. 335, 337 (511 SE2d 880) (1999). We will not reverse the trial court's findings of fact if any evidence exists to support them. Id. Here, the trial court found that all the items seized "were either used to facilitate violations of the Georgia Controlled Substances Act or were located in close proximity to controlled substances and were proceeds derived from violations of such Act."

The trial court did not err. Property may be forfeited if it "is, directly or indirectly, used or intended for use in any manner to facilitate a violation of [the Georgia Controlled Substances Act] or any proceeds derived or realized therefrom." OCGA § 16-13-49 (d) (2). Ample evidence was presented to establish that was the case here. Although Davis complains that the State did not establish that he possessed at least one gram of cocaine, that assertion is belied by the record. A Georgia Bureau of Investigation forensic chemist authenticated records showing that the sample submitted was cocaine, and the laboratory report showed 67.2 grams of the cocaine to have 78 percent purity. In addition, an officer testified that he field tested the cocaine, and by its color, he knew that "it was going to be a good purity." Evidence showed that Davis was able to supply a kilo of cocaine on very short notice, leading to an inference that he was reg-

ularly engaged in the drug trade. Davis's explanations for the presence of the large amount of cash in his apartment were not reasonable, given the earnings he had reported to the Internal Revenue Service, nor was his explanation for having the bulletproof vest and the gun. He had no explanation for the presence of cocaine in the Volvo. Applying the appropriate standard of review, we have no hesitation in finding that the trial court's judgment of condemnation is supported by a preponderance of the evidence.

*Judgment affirmed. Eldridge and Ellington, JJ., concur.*

DECIDED JULY 2, 2002.

*J. Alfred Johnson*, for appellant.

*Patrick H. Head, District Attorney, William M. Clark, Amy H. McChesney, Assistant District Attorneys*, for appellee.