## A02A1089. COOPER v. THE STATE.
(575 SE2d 691)

ELDRIDGE, Judge.

Kenneth Cooper appeals from a Fulton County jury verdict finding him guilty of trafficking in cocaine under Count 1 of the indictment and possession of cocaine with intent to distribute under Count 2, which offenses arose pursuant to a warrant search of Cooper's apartment wherein 171.8 grams of cocaine were found on the nightstand in Cooper's bedroom. In addition, the jury found Cooper guilty of possession of cocaine with intent to distribute under Count 4 of the indictment, which charge arose when, at the time Cooper was arrested for the offenses connected to the search of his apartment, an additional bag of suspected crack cocaine was found in his car.[1]

Cooper appeals, and in a 50-page, maximum-allowable brief defying the type-size and line-spacing requirements of this Court to a mind numbing degree,[2] he claims nine errors of law (with innumera-

[1] The trial court directed a verdict on Counts 3 and 5 of the indictment.
[2] See Court of Appeals Rules 1 (a) and (c) and 23 (a)-(e).

ble sub-parts in each) require reversal of his convictions. As Cooper's brief was not returned to him timely in order to "redact and recast such document" so as to comply with the rules of this Court,[3] we will consider Cooper's claims, albeit with a difficulty solely of his own making. Upon review, we find as follows.

1. Cooper claims that the trial court erred in denying his motion in limine, because his custodial statement was taken in violation of his Fifth Amendment right to silence. Under the specific facts of this case, we disagree.

The admissibility of Cooper's statement was determined via a *Jackson-Denno*[4] voluntariness hearing. In that regard,

> [i]n ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. . . . Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.[5]

In this case, *Miranda*[6] rights were given on the scene, and Cooper invoked his right to remain silent when he told the police, "I don't have anything to say." The arresting officers honored Cooper's right by immediately placing him in a police vehicle where he had no further contact with anyone until he arrived at the police precinct for processing "paperwork and [Cooper's] vehicle."

At the precinct, Cooper was not asked about his case or the circumstances surrounding his arrest. He was asked whether he wanted to become an informant for the police, and he "refused. He said he didn't want to talk about anything[,]" so the officers "didn't press the issue."

Moreover, at the precinct, Cooper was not silent. He questioned the officers about contacting his girlfriend; he questioned the officers about his girlfriend's picture. General conversation ensued:

> We didn't really ask him any interrogating questions. We were just talking to him like I'm talking to you now. We didn't ask him where he got the dope from, was it his dope; we didn't ask him anything interrogating him. We were just

---

[3] Court of Appeals Rule 1 (c).

[4] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[5] (Citations and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 364 (2) (541 SE2d 369) (2001).

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

talking, and his main concern was getting in touch with his girlfriend.[7]

The evidence is undisputed that the officers never questioned or interrogated Cooper about anything related to his arrest or their case against him. Cooper was informed of the charges against him, and "at that time [an officer] asked Mr. Cooper did he have anything to say." To this general, open-ended question,[8] Cooper voluntarily made the statement at issue, i.e., that "he bought the drugs found in his car because he needed to make some money for the earlier raid on his apartment."

Most notably, Cooper testified at the *Jackson-Denno* hearing, where he specifically testified that he did not feel he had to make any statements at the precinct: "[Defense:] Did you feel that you had to make statements when you were taken into that room? [Cooper:] No, sir."

In a custodial interrogation context, "Coercion is determined from the perspective of the suspect."[9] Here, Cooper did not testify that his statement was made involuntarily; he did not testify that his statement was made in response to police questioning/interrogation. He did not testify that the police asked any questions about his case at all. In fact, Cooper testified that *he did not even make the statement at issue*, let alone that it was involuntary or the result of police interrogation in violation of his right to silence.

In light of the fact that Cooper specifically testified that he did not feel he had to make any statement to the officer and, thus, any statement would be voluntary; that he did not testify that any statement was made as a result of police interrogation; that he did not testify any right to remain silent was violated; that the police testified that Cooper's statement was voluntary and not made as a result of police interrogation; that the evidence shows that no interrogating questions about Cooper's case were asked; that Cooper did not remain silent but engaged the police in conversation; and that the statement at issue was made voluntarily in response to a single, general, open-ended question, "do you have anything to say," which was asked after Cooper had already engaged in conversation with the

---

[7] These factual observations go to the totality of the circumstances demonstrating the voluntariness of Cooper's statement; we do not find that engaging in subsequent conversation with the police – *alone* – waives a defendant's prior invocation of a Fifth Amendment right to silence.

[8] Compare *Walton v. State*, 267 Ga. 713, 717 (3) (482 SE2d 330) (1997) (after invoking his right to speak to officers through an attorney pursuant to *Miranda*, police asked defendant if he "wished to make a statement *about the charges lodged against him*" without first making an attorney available) (emphasis supplied).

[9] *Illinois v. Perkins*, 496 U. S. 292, 296 (110 SC 2394, 110 LE2d 243) (1990).

police, we conclude under the totality of the circumstances that the trial court's finding that Cooper's statement was made freely and voluntarily pursuant to the requirements of *Jackson-Denno* was supported by the evidence and thus was not clearly erroneous.

Surely, we will have gone far afield, indeed, when, after Cooper willingly conversed with law enforcement in contradiction to his right to silence, an officer's simply asking him if he has anything to say becomes the "coercive police practices" against which *Miranda* was designed to protect.[10] Instead, an open-ended, "Do you have anything to say" is a phrase normally attendant with arrest, custody, and processing, and nothing in the record supports a determination that the officers "*should have known* [such general question] was reasonably likely to elicit an incriminating response" from Cooper.[11]

Thus, construing Officer Dunham's testimony as "true," as we must based on the credibility determination of the trial court, Cooper's right to remain silent was honored; conversations with Cooper were general and centered on Cooper's desire to contact his girlfriend; no interrogation occurred; and no "behavior" on the part of the police elicited Cooper's statement: "[Q:] Was [Cooper's statement] in response to any kind of question you asked? [Dunham:] No, no." Even Cooper testified that no police behavior elicited a statement from him. Since improper interrogation "focuses primarily upon the perceptions of the suspect, rather than the intent of the police,"[12] and Cooper testified undisputedly that nothing the police did or said compelled or coerced his statement, we will not elevate form over substance by engaging in speculation as to whether the police honored Cooper's right to silence "scrupulously enough," and disregard whether such police behavior actually compelled Cooper to make the disputed statement. "Since the record supports the trial court's ruling that [Cooper's] statement was voluntary and not part of an interrogation, we conclude that the trial court did not err in admitting the statement into evidence."[13]

2. In his second enumeration of error, Cooper claims, inter alia, that the warrant for his arrest was unsupported by probable cause. We disagree.

A warrant for Cooper's arrest was issued based on an officer's affidavit and testimony relating facts obtained from both (1) a controlled buy by a confidential informant ("CI") from a person named "Ken" at apartment No. 9, 2165 Martin Luther King, Jr. Drive, and (2) evidence discovered in the search of apartment No. 9. The evi-

---

[10] *Rhode Island v. Innis*, 446 U. S. 291, 301 (100 SC 1682, 64 LE2d 297) (1980).
[11] (Emphasis in original.) Id. at 301.
[12] Id.
[13] *Garner v. State*, 267 Ga. 884, 885 (3) (485 SE2d 729) (1997).

dence showed that 171 grams of cocaine were found on the nightstand in what was identified as "bedroom 1" of the apartment; that, in bedroom 1 and in close proximity to the cocaine, Cooper's Social Security card was found; photographs of Cooper were found, which photographs bore a strong resemblance to the description the CI gave of the person who sold her cocaine from the apartment; Cooper's son's birth certificate naming Cooper as the father was found; and a rental receipt for the big screen television in the apartment was found with Cooper's name on it, as well as the address No. 9, 2165 Martin Luther King, Jr. Drive. "Based on this evidence, we conclude that the officer presented the issuing magistrate with sufficient information to support the magistrate's independent finding that probable cause existed for the issuance of the warrant."[14]

3. We likewise find meritless Cooper's contention that the trial court erred by failing to force the State to disclose the identity of the CI.

> Public policy in Georgia favors nondisclosure of the identity of an informant in the interest of the free flow of information about criminal activity. The identity of a mere tipster is privileged, but where the informer is a witness or participant, or has entrapped a defendant into committing a crime, disclosure could be material to the defense. This court has held numerous times that disclosure of an informant's identity was required where the informant was a witness or participant whose testimony would be the only testimony available to amplify or contradict that of the [witnesses].[15]

The CI in this case purchased suspected contraband and provided information that led to issuance of the search warrant. But, as in *Ezzard v. State*, above, it is undisputed that the CI was neither a witness to nor a participant in the crimes with which Cooper was charged.[16] Accordingly, the necessity for disclosure has not been shown.

Further, and contrary to Cooper's additional argument, the trial court was not necessarily obligated to conduct an in camera hearing on the issue of the necessity of the informant's testimony. The court concluded after hearing argument before trial that "the fact of the sale to the confidential informant is not necessary" for prosecution of the crimes charged in the indictment and that the State's case was

---

[14] *Stubbins v. State*, 273 Ga. 471, 472 (2) (542 SE2d 506) (2001).
[15] (Citations and punctuation omitted.) *Ezzard v. State*, 230 Ga. App. 147-148 (1) (495 SE2d 620) (1998).
[16] Id.; *Turner v. State*, 247 Ga. App. 775, 777 (2) (544 SE2d 765) (2001).

based on the evidence seized from Cooper's apartment, in addition to other evidence gathered by the prosecution. This was an implicit conclusion that the CI was not a material or necessary witness, and "[a]fter such a determination has been made, no further inquiry by the trial court is required."[17]

4. Next, Cooper contends the trial court erred in permitting Officer Dunham to testify as to the hearsay statements of the CI. We must agree with this contention.

After purchasing an alleged $10 "hit" of cocaine inside apartment No. 9, the informant returned to Dunham's car, told Dunham that "the individual's name was Ken," and provided a description of the person from whom she bought the substance. During the hearing on Cooper's pre-trial motion to exclude any statements made by the informant, the State argued that it intended to use the evidence to show "that there was a basis for the search warrant." The court concluded that the State could introduce the testimony "giving a basis for" the search warrant affidavit.

While it is true that hearsay information can in certain instances provide a "basis" for a search warrant,[18] the existence of probable cause for a search warrant is a legal issue for the court, not the jury.[19] Further, the CI's statements were inadmissible at trial to explain Officer Dunham's conduct in obtaining the search warrant. "[O]nly in rare instances will the conduct of an investigating officer need to be explained."[20] The State has not shown that this is one of those instances. Consequently, the trial court erred in admitting the CI's hearsay statement at trial.

However, "[i]t is axiomatic that harm as well as error must be shown in order to authorize a reversal by this court."[21] In this case, the complained-of testimony was simply cumulative of other evidence introduced at trial. Officer Dunham was present at the controlled buy and testified at trial that cocaine was purchased at apartment No. 9. In addition Dunham testified that, during the search, numerous documents belonging to "Kenneth Cooper" were located in the immediate vicinity of a trafficking amount of cocaine found in the apartment, which documents included photographs of Cooper. Further, Cooper's cousin identified him at trial and testified that the cocaine in apartment No. 9 belonged to Cooper.

---

[17] (Citation omitted.) *Ezzard v. State*, supra at 148 (1).

[18] See, e.g., *Deal v. State*, 199 Ga. App. 184, 185 (1) (404 SE2d 343) (1991).

[19] *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983).

[20] *Brown v. State*, 274 Ga. 31, 36 (2) (549 SE2d 107) (2001).

[21] (Citation omitted.) *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001).

The erroneous admission of hearsay is harmless where legally admissible evidence of the same fact is introduced. The admission of hearsay identification evidence is harmless error where such evidence is merely cumulative or supported by a positive identification and other corroborative circumstances.[22]

Accordingly, the instant enumeration of error presents no basis for reversal.

5. Cooper contends that the State failed to establish a chain of custody for the cocaine seized from his apartment, identified at trial as State's Exhibit 10, and therefore that the State failed to prove beyond a reasonable doubt that the substance was cocaine. We do not agree.

When the State introduces fungible evidence, it must show a chain of custody that adequately preserves the identity of the evidence.[23] The State must,

show with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State need not negative every possibility of tampering, and need only establish reasonable assurance of the identity of the evidence. When there is only a bare speculation of tampering, it is proper to admit the evidence and let what doubt remains go to the weight.[24]

In reviewing chain of custody rulings, we apply a "clearly erroneous" or "abuse of discretion" standard.[25]

In this case, Officer Dunham testified that he placed the cocaine seized from Cooper's apartment into a City of Atlanta evidence bag and that the drugs were under his control until he deposited it into the appropriate city property lockbox on the same day as the search and seizure. Dr. Solomon Noble, a forensic chemist with the Georgia Bureau of Investigation, testified that he received a bag containing a solid substance which he tested at Dunham's request. This evidence arrived at the crime lab, along with a quantity of suspected marijuana, within two weeks from the date of the search of Cooper's apartment. The evidence bag was sealed when Noble received it. Noble tested the solid substance and concluded it was cocaine. He placed the evidence in its original bag, which was then heat-sealed

---

[22] (Citations and punctuation omitted.) *White v. State*, 273 Ga. 787, 791 (4) (546 SE2d 514) (2001).

[23] *Anderson v. State*, 247 Ga. 397 (276 SE2d 603) (1981).

[24] (Citations and punctuation omitted.) Id. at 399 (2).

[25] *McNair v. State*, 240 Ga. App. 324, 326 (4) (523 SE2d 392) (1999).

and stored in the evidence vault at the laboratory until it was retrieved the day before trial. Noble identified the evidence at trial by use of the laboratory number assigned to it, which matched the number on his lab report, and he stated that the evidence was under his "care, custody, and control" until he released it the day before for use at trial.

> The testimony of the officers who seized the evidence regarding the manner in which it was safeguarded and kept in the evidence safe until it was transported to the crime laboratory, coupled with the testimony of the crime laboratory expert who analyzed the evidence and delivered it to the district attorney's office, was sufficient to establish the requisite chain of custody.[26]

Further, Cooper has pointed to no evidence of tampering. And in the absence of such evidence, the State has established with reasonable certainty that the substance tested by Noble was that seized and submitted for testing by Dunham.[27]

6. We next address Cooper's claims of improper argument and comment by the prosecutor. He identifies numerous alleged instances of such, which we find meritless for the following reasons.

(a) The prosecutor's complained-of comments about the dangers of executing a search warrant addressed the rationale for Officer Dunham's obtaining a "no-knock" search warrant and forcing entry into apartment No. 9. Thus, such comments and related testimony were not gratuitous or improper, as Cooper contends. Further, inasmuch as Cooper did not promptly interpose an objection to the prosecutor's statements or argument or move for a mistrial, he has waived his right to complain on appeal.[28]

(b) We do not find an improper comment on Cooper's right not to testify based on a portion of the closing argument wherein the prosecutor stated, "As you recall yesterday when the judge asked whether you're going to put up a defense, they spent about ten minutes trying to figure out their strategy again." Cooper, however, strips the prosecutor's comment from its context in order to make this argument. When taken in context, the prosecutor's complained-of statement went to the defense's lack of trial strategy to rebut the State's prima facie case[29] and cannot fairly be viewed as the prosecutor's intent to

---

[26] *Robinson v. State*, 231 Ga. App. 368, 369 (2) (498 SE2d 579) (1998).

[27] *Calloway v. State*, 141 Ga. App. 125, 126 (2) (232 SE2d 603) (1977).

[28] *Metts v. State*, 270 Ga. 481, 484-485 (4) (511 SE2d 508) (1999).

[29] See *Howard v. State*, 251 Ga. App. 243, 246 (7) (a) (553 SE2d 862) (2001) ("It is permissible for the State to comment on a defendant's failure to present evidence to rebut the State's prima facie case.").

comment on Cooper's right not to testify.[30] Accordingly, this claim is without factual merit.

(c) We also do not perceive a "future dangerousness" argument in the prosecutor's close.[31] The portion of the closing argument about which Cooper complains went to the dangerousness of drugs as leading to the destruction of lives and communities. Such argument addressing the impact of illegal drugs on society is not improper.[32] The prosecutor's argument urged conviction based on current evidence that Cooper was a drug dealer and cannot be seen as urging conviction based on the future dangerousness of Cooper. Moreover, "[a] defendant must object to the alleged impropriety at the time it occurs in order to afford the trial court the opportunity to take remedial action."[33] The failure to object waives this claim.

(d) We find that the remainder of Cooper's claims of prosecutorial misconduct are waived for failure to object.[34] Further, as to all of the instant claims of prosecutorial misconduct, Cooper has not demonstrated that it is highly probable the prosecutor's alleged misconduct contributed to the jury's verdict.[35]

7. Cooper also alleges that he received ineffective assistance of counsel at trial. In that regard,

> The proper standard to be employed in determining enumerations concerning ineffective assistance of counsel, whether based upon a claim of right arising under federal or state law, is the two-pronged test announced in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). First, appellant must show that counsel's performance was deficient; second, he is required to show that he was prejudiced by counsel's deficient performance. There is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. As to the second prong, the question is whether there exists a reasonable probability that, but for his counsel's errors, the jury would have had a reasonable doubt regarding appellant's guilt, that is, but for counsel's unprofessional errors, the result of the proceeding would have been different. Further, a trial court's finding

---

[30] *Lassiter v. State*, 237 Ga. App. 495, 498 (2) (515 SE2d 636) (1999).
[31] See *Sterling v. State*, 267 Ga. 209, 210 (2) (477 SE2d 807) (1996) (improper to argue defendant's future dangerousness when jury decides only guilt or innocence).
[32] *McKibbons v. State*, 216 Ga. App. 389, 392-393 (4) (455 SE2d 293) (1995).
[33] *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996).
[34] Id.; *Harper v. State*, 249 Ga. 519, 535 (292 SE2d 389) (1982).
[35] *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976).

that a defendant has been afforded effective assistance of counsel must be upheld unless that finding is clearly erroneous.[36]

Under this enumeration, Cooper lays out a veritable litany of complaints against his trial attorney. Inter alia, he claims that his counsel was ineffective for:

(a) Failing to argue *Miranda* at the *Jackson-Denno* hearing. But trial counsel did so argue, and he preserved the Fifth Amendment issue discussed in Division 1, supra, for review. Factually meritless claims do not demonstrate ineffective assistance of counsel;

(b) Failing to appear on time at the initial scheduling of the motion for new trial, thereby resulting in summary denial of the motion, which denial was ultimately reversed by this Court for a new trial hearing on the merits.[37] However, when reversing in *Cooper I*, we found error on the part of the trial court. We did not and do not find that counsel's conduct warranted the trial court's action in summarily dismissing the motion for new trial without a hearing. Accordingly, this claim, too, is without factual basis;

(c) Failing to object to the instances of alleged improper argument and comment by the prosecutor, as outlined in the prior enumeration of error discussed in Division 6, supra. However, in Division 6, we identified several instances of alleged improper argument that were, in fact, proper, and thus, objection would not be warranted. "Failure to make a meritless objection cannot be evidence of ineffective assistance."[38] Other instances were without factual basis. Further, trial counsel testified at the motion for new trial as to additional instances wherein he determined that objection was either unwarranted or unnecessary. "This decision amounted to one of trial tactics and strategy which did not constitute ineffective assistance."[39] In the remainder of the instances, trial counsel did object, just not on the grounds current counsel now urges. But "trial counsel's strategy was not unreasonable merely because appellate counsel would have pursued a different strategy."[40]

In addition, Cooper asserts that his counsel should have requested limiting instructions regarding the use of CI testimony, without stating what those instructions should have been; that trial counsel should have presented certain, specific cases to the trial court in support of motions for directed verdict, although the manner

---

[36] *Moon v. State*, 252 Ga. App. 796, 798 (2) (557 SE2d 442) (2001).

[37] *Cooper v. State*, 249 Ga. App. 881 (549 SE2d 829) (2001) ("*Cooper I*").

[38] *Hayes v. State*, 262 Ga. 881, 884-885 (3) (c) (426 SE2d 886) (1993).

[39] *Graham v. State*, 251 Ga. App. 395, 398 (2) (d) (554 SE2d 528) (2001).

[40] *Anderson v. State*, 274 Ga. 871, 874 (4) (560 SE2d 659) (2002).

in which one argues a motion is a matter of trial strategy;[41] that trial counsel should have objected under the "best evidence rule" to the introduction of documents found in Cooper's apartment, although the complained-of documents were introduced to establish the fact of Cooper's residence, not the content of the documents themselves, and so the "best evidence rule" would not apply;[42] and that counsel should have renewed objection to Cooper's statement when Officer Dunham testified that, if Cooper had wanted to become an informant for the State, *Miranda* would have to be regiven because an incriminating statement *might* be forthcoming — although this factual assertion provides no basis for objection because Cooper did not want to become an informant and thus no incriminating information was either forthcoming or expected.

To the extent that additional ineffectiveness claims can be culled from Cooper's laundry list of alleged attorney error, we find them meritless for the failure either to show error, to show prejudice, or to show as "clearly erroneous" the trial court's determination that Cooper received effective assistance of counsel at trial.

8. Finally, Cooper contends the trial court should have directed a verdict under Count 4 of the indictment charging him with possession with intent to distribute as to the drugs seized from his car at the time of his arrest. Cooper claims that the State failed to prove beyond a reasonable doubt that the substance seized was, in fact, cocaine as alleged in the indictment. We are constrained to agree.

Although photographs of the drugs were admitted into evidence, the substance itself was not. Moreover, it was not tested by the crime laboratory. For these reasons, the trial court directed a verdict on Count 3, charging Cooper with trafficking in cocaine as to the substance found in his car. But the court allowed the jury to consider Count 4, the possession with intent to distribute cocaine charge, concluding that the State presented sufficient evidence that the substance found in the car was cocaine. The court based this ruling on Dunham's testimony, on the photographs admitted into evidence, and on Cooper's post-arrest statement. We cannot agree with the trial court's conclusion.

In Cooper's post-arrest statement, while he stated narcotics were seized from his car, he did not identify the narcotics as cocaine. Officer Dunham, while an expert at drug identification, did not iden-

---

[41] See *Craft v. State*, 254 Ga. App. 511, 521-522 (563 SE2d 472) (2002) ("Counsel's decision as to which theory of defense to pursue is a matter of strategy and tactics; and, as a general rule, matters of tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel.").

[42] The best evidence rule applies only when a writing is introduced to establish the existence or content of the document and is not applicable when a party uses the document to prove a fact. *Shivers v. State*, 188 Ga. App. 744 (374 SE2d 233) (1988).

tify the seized substance as actual cocaine; he referred to it throughout his testimony as "suspected cocaine." Also, the record does not show that Dunham performed any tests on the substance. Further, the photographs admitted into evidence did not establish the identity of the substance. They depicted only a few plastic bags filled with a light-colored powder. Finally, co-defendant Lucas' testimony and the purported statement by the CI could be viewed as establishing that the substance seized from apartment No. 9 was cocaine, but this evidence does not identify the substance found in Cooper's car several days later.

In sum, the State failed to prove *beyond a reasonable doubt* that the contraband seized from Cooper's car was, in fact, cocaine as alleged in the indictment. Therefore, the State failed to prove an essential element of its case.[43] The trial court erred in denying Cooper's motion for directed verdict of acquittal on Count 4, and we reverse as to that count. Our reversal based upon the insufficiency of the State's evidence precludes retrial on the allegata of Count 4.[44] To the extent that any of Cooper's enumerated errors and related arguments address issues allegedly authorizing reversal on Count 4 as to the drugs seized from Cooper's vehicle, they are hereby rendered moot as to such count.

*Judgment affirmed as to Counts 1 and 2. Judgment reversed as to Count 4. Andrews, P. J., Ruffin, P. J., Ellington, J., and Pope, Senior Appellate Judge, concur. Smith, P. J., and Barnes, J., concur in part and dissent in part.*

SMITH, Presiding Judge, concurring in part and dissenting in part.

Although I concur with Divisions 2 through 8, I respectfully dissent as to Division 1 of the majority opinion because I believe the trial court erred in denying Cooper's motion to suppress his purported statement.

Evidence presented during the *Jackson-Denno* hearing and at trial showed that Dunham read *Miranda* warnings to Cooper at the time of his arrest. Dunham testified that Cooper stated he understood his rights, and when asked if he wanted to talk to Dunham, Cooper said, "No, I don't have anything to say." Cooper's vehicle was then searched, and alleged contraband was discovered. According to Dunham, Cooper was transported to the police precinct and taken into an interrogation room, and the officers "told him what charges we had on him and we asked him did he want to help hisself [sic], and he said no." When asked to explain the meaning of the phrase,

---

[43] *Johnson v. State*, 205 Ga. App. 760, 761 (423 SE2d 702) (1992).
[44] *Nance v. State*, 274 Ga. 311 (553 SE2d 794) (2001).

"help yourself" in the context of the interrogation room conversation, Dunham testified that individuals in street gangs "know exactly what that means. If [an] officer catches you with a lot of narcotics and they ask you if you want to help yourself, that's common knowledge . . . they know either I can help myself if I give somebody up bigger than I am, or either I don't say anything." Dunham also explained that if Cooper had said "yes" when asked if he wanted to help himself out, Dunham would have been obligated to read Cooper "his *Miranda* rights again, because then, he would have been saying something incriminating, but since he didn't, I didn't have to read him his *Miranda* rights."

Dunham testified that after Cooper stated he had nothing to say, Dunham and the other officer "were just talking to him like I'm talking to you," and "Cooper's main focus was contacting his girlfriend and asking whether or not we were going to keep his girlfriend's picture." Cooper was "pretty closed lipped" and did not want to talk about anything except his girlfriend, and Dunham testified that after Cooper stated he did not want to say anything, the officers "didn't press the issue." They searched Cooper and found some money and a copy of the search warrant affidavit left at his apartment on July 8. Dunham testified that after this search of Cooper's person, the other officer continued to talk to Cooper, explained the charges against him, and asked him if he had "anything to say." At that time, Cooper allegedly said that he had drugs in his car because he needed to make some money after the earlier raid on his apartment. Dunham understood the "raid" to mean the July 8 search and seizure of contraband at Cooper's apartment.

Dunham testified that Cooper was not threatened or intimidated into making the statement. Dunham stated that the officers did not "really ask him any interrogating questions" but were "talking to him like I'm talking to you now. We didn't ask him where he got the dope from, was it his dope; we didn't ask him anything interrogating him." Cooper testified during the *Jackson-Denno* hearing that he told the police he did not want to say anything, and he denied making the statement attributed to him.

In denying Cooper's motion to suppress, the trial court emphasized the fact that Cooper denied making the statement. Indeed, the trial court may have even partially based its ruling on this denial. It also appears that the trial court may have believed that Cooper would testify at trial and deny making the statement. Of course, Cooper was under no obligation to testify at trial, and in fact he did not. The trial court also noted that "at one point, the officer said [the statement] wasn't even in response to saying did you want to help yourself, that he was just kind of explaining what he was doing and that there wasn't any intimidation or threat or promise or any such

thing, there really wasn't even any interrogation at all." The court found that the statement was not inadmissible on the ground that it was coerced, that it was given in the absence of *Miranda* warnings, or that it was given in response to threats or promises. Cooper argues that this ruling "failed to address the fundamental error under *Miranda* that required that this statement be suppressed: that Appellant had twice invoked his right to remain silent and did not later re-initiate the discussion."

In reviewing a trial court's ruling on a motion to suppress, the appellate courts of this state construe the evidence in favor of upholding the trial court's findings and will not disturb a trial court's findings on conflicting evidence unless they are "completely unsupported by evidence." *Davis v. State of Ga.*, 256 Ga. App. 299, 301 (1) (568 SE2d 161) (2002). See also *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994). But even applying this highly deferential standard to the trial court's ruling, under the facts of this case, I agree with Cooper that the trial court did not address the fact that immediately after Cooper invoked his right to remain silent, interrogation continued.

The officers' interrogation room conduct exceeded their authority. "A person being subjected to custodial interrogation may at any time express his or her desire to remain silent and, thereby, end the interrogation. Any exercise of this right to silence must be scrupulously honored." (Punctuation and footnote omitted.) *Green v. State*, 275 Ga. 569, 571-572 (570 SE2d 207) (2002).[45] And

> [a]lthough the right to silence is not protected by a per se rule of permanent immunity against further police-initiated interrogation, nevertheless, a suspect's request to cut off questioning serves as a complete bar to any questioning initiated by the police for a significant period of time after the request.

(Citations and punctuation omitted.) *Hatcher v. State*, 259 Ga. 274, 277 (2) (379 SE2d 775) (1989).

Here, Cooper asserted his right to remain silent. He stated to Dunham that he had nothing to say immediately after Dunham arrested him and read his *Miranda* rights. After that, however, Cooper was taken to an "interrogation room." Dunham testified that

---

[45] In *Green*, when told by a detective that law enforcement would not "be able to talk to you anymore," the defendant replied, "That's cool. . . . I don't want to talk." Id. at 572. The Supreme Court concluded that this response was an unambiguous statement that the defendant did not wish the interrogation to continue and that the defendant's responses to interrogation after that point were to be suppressed at trial.

the officers did not ask Cooper any "interrogating questions," but while in the interrogation room and less than an hour after his clear invocation of his rights, Cooper was asked if he wanted to help himself. He again gave a negative response. Dunham realized the possibility that Cooper's reply could be incriminating, as he testified that if Cooper had responded affirmatively, he would have been required to read Cooper's *Miranda* rights again. Finally, within minutes, the other officer present in the room asked Cooper if he had "anything to say," and Cooper made the statement attributed to him by Dunham. Cooper was therefore questioned at least two times after he stated that he did not want to say anything. It does appear, as found by the trial court, that Cooper's purported statement was not directly made in response to the question of whether he wanted to "help himself out." But the purported statement *was* made in direct response to the other officer's question of whether he had anything to say.[46]

I find *Washington v. State*, 192 Ga. App. 678 (385 SE2d 767) (1989), and *Spratley v. State*, 169 Ga. App. 922 (315 SE2d 474) (1984), cited by the State, to be distinguishable. In each case, after invoking his constitutional rights, the defendant later showed a clear willingness to make a statement. In contrast, the questioning by the officers here continued a short time after Cooper stated that he had nothing to say. The State correctly points out that Cooper testified during the *Jackson-Denno* hearing that he did not feel that he "had to make statements when [he was] taken into" the interrogation room. But at the time he was taken into that room, he had not been twice questioned following his unequivocal assertion of his rights.

It is also true that Cooper denied making the statement. This fact, however, is not controlling. In finding the statement to be voluntary, the trial court implicitly found Dunham's testimony to be more credible than that of Cooper, and deference must be given to that credibility finding. See *Tate*, supra at 54 (1). But even construing Dunham's testimony as true, i.e., that Cooper made the statement attributed to him, I cannot conclude from the police officers' behavior that Cooper's unequivocal invocation of his right to remain silent was "scrupulously honored." See *Green*, supra; *Hatcher*, supra.

I am consequently constrained to conclude that the trial court clearly erred in denying Cooper's motion to suppress. The remaining evidence against Cooper with respect to Counts 1 and 2 was not overwhelming in my opinion, and I cannot conclude that a high

---

[46] In its appellate brief, the State asserts that Cooper's "statement was not in response to any questions asked by the officers." The record shows otherwise. The trial court asked Dunham if the statement was "in response to any kind of question you asked," and Dunham answered in the negative. This exchange, however, did not address the other officer's question to Cooper, asking him if he had anything to say.

probability exists that the erroneously admitted statement did not contribute to the verdict.

I am authorized to state that Judge Barnes joins in this opinion.

DECIDED NOVEMBER 27, 2002 —
RECONSIDERATION DENIED DECEMBER 13, 2002

*Charles H. Frier*, for appellant.
*Paul L. Howard, Jr., District Attorney, Amira A. Arshad, Anne E. Green, Assistant District Attorneys*, for appellee.